**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| TRAVELERS CASUALTY INSURANCE COMPANY OF AMERICA | |
|       Plaintiff, | |
| v. | Case No. |
| WESTWARD MANAGEMENT, INC., KENMORE CLUB CONDOMINIUM ASSOCIATION, HARRY CHANNON and DAWN CHANNON, | |
|       Defendants. | |

## COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff, TRAVELERS CASUALTY INSURANCE COMPANY OF AMERICA ("Travelers"), by and through its attorneys, Karbal, Cohen, Economou, Silk & Dunne, LLC, hereby file its Complaint for Declaratory Judgment against Defendants, WESTWARD MANAGEMENT, INC. ("Westward"), KENMORE CLUB CONDOMINIUM ASSOCIATION (the "Kenmore Club"), HARRY CHANNON and DAWN CHANNON (the "Channons") (referred to collectively herein as "Defendants") and allege as follows:

## NATURE OF THE ACTION

1.    In this action, Travelers seeks a declaration from this Court, pursuant to 28 U.S.C. § 2201 and Fed. R. Civ. P. 57, that it has no duty or obligation to defend or indemnify Kenmore Club or Westward under seven policies of insurance issued by Travelers to

Kenmore Club (collectively referred as the "Travelers Policies")[1], with respect to the matter captioned *Harry Channon and Dawn Channon v. Westward Management, Inc., et al.* pending in the Circuit Court of Cook County, Chancery Division, Illinois, Case No. 2019 CH 04869 (the "Underlying Litigation").

2.       Specifically, there is no coverage for the Underlying Litigation because the claims do not fall within the insuring agreements of the Travelers Policies, the insureds failed to satisfy several conditions to coverage and because the claims asserted therein are excluded from coverage. Accordingly, Travelers is entitled to a declaration that it has no duty to defend or indemnify Westward or Kenmore Club for the Underlying Litigation.

## THE PARTIES

3.       Plaintiff Travelers is a Connecticut corporation with its principal place of business located in Connecticut.

4.       Defendant Westward is a Delaware corporation with its principal place of business located in Chicago, State of Illinois.

5.       Defendant Kenmore Club is an Illinois Not for Profit corporation with its principal place of business located in Chicago, Cook County, Illinois.

6.       Defendants Harry Channon and Dawn Channon are citizens of the State of Illinois.

---

[1]

| Policy Number | Policy Period |
|---|---|
| 680-2F118542-15-42 | 10/26/2015-16 (the "2015-16 Policy) |
| 680-7H134141-16-42 | 10/26/2016-17 (the "2016-17 Policy) |
| 680-7H134141-17-42 | 10/26/2017-18 (the "2017-18 Policy) |
| 680-7H134141-18-42 | 10/26/2018-19 (the "2018-19 Policy) |
| 680-7H134141-19-42 | 10/26/2019-20 (the "2019-20 Policy) |
| 680-7H134141-20-42 | 10/26/2020-21 (the "2020-21 Policy) |
| 680-7H134141-21-42 | 10/26/2021-22 (the "2021-22 Policy) |

7.      Travelers does not seek any affirmative relief against Harry Channon and Dawn Channon and has included them as interested parties in order to secure an adjudication binding on them with respect to the matters alleged herein and will dismiss them if they agree to be bound by the outcome of this matter

## JURISDICTION AND VENUE

8.      This Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332(a), because the Plaintiff and the Defendants are citizens of different states.

9.      This Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332(a) because the amount in controversy exceeds $75,000, exclusive of interest and costs, because the Underlying Plaintiffs allege that the alleged class exceeds 1000 members, and are seeking damages of at least $245 per class member, punitive damages and other relief.  Further, the amount in controversy includes defense costs incurred and to be incurred by Westward and Kenmore Club defending the Underlying Litigation and therefore, the controversy between Travelers on the one hand and Kenmore Club and Westward on the other exceeds $75,000.

10.     The Court has personal jurisdiction over Defendants Channons because they are residents of the State of Illinois.

11.     The Court has personal jurisdiction over Defendants Kenmore Club and Westward because the claim at issue in this declaratory judgment action arise out of a class action in Cook County, Illinois.

12.     Venue is appropriate in the Northern District of Illinois as Defendants are residents of and doing business in the Northern District of Illinois, and this matter arises out of acts that took place in, contracts performed in and litigation that is pending in this judicial district.

## BACKGROUND FACTS

13.     Travelers' insured Kenmore Club is an Illinois not for profit Condominium Association.

14.     Westward is the property management agent for the Kenmore Club Condominium Association. The purported Class Action Complaint in the Underlying Litigation filed on April 16, 2019 (the "Channon Complaint") and served on Westward in May of 2019. See Channon Complaint, attached as Exhibit 1.

15.     The Channon Complaint alleges that Westward is Kenmore's agent in connection with financial management and record keeping of documents as described in the Illinois Condominium Act.  The Underlying Plaintiffs also allege that Westward is also Kenmore Club's designated agent in connection with the resale and transfer of ownership of condominium units within Kenmore Club's property, located at 5109 N. Kenmore Avenue, Chicago, Illinois (the "Property").

16.     The Plaintiffs, Harry and Dawn Channon, allege in the Channon Complaint against Westward that in or about March 2016, in the course of selling their condo located within The Kenmore Club's Property, they requested documents from Westward in compliance with the Illinois Condominium Act.

17.     The Channon Complaint alleges that The Kenmore Club is not able to provide the disclosure documents to the condo seller but designated Westward to manage disclosure documents as part of its professional financial management services to the insured.

18.     The Channon Complaint further asserts that Westward did not comply with the reasonable fee for out-of-pocket costs for providing disclosure documents but rather, charged oppressive fees totaling $245. The Underlying Plaintiffs assert that Westward's acts caused

substantial injury to consumers because the Channons and class members are forced to pay the fees to obtain the documents.

19.     The Channon Complaint asserts that on or about July 28th, 2017, the Channons sent a letter to Westward, in which they demanded that Westward provide information and documentation supporting Westward's out of pocket cost for providing disclosure documents, the basis for how Westward determined the amount to charge for those documents, and supporting documentation for the $150 charge for the paid assessment letter (the "Channon Demand".) A copy of the Channon Demand letter was attached as Exhibit F to the Channon Complaint.

20.     The Channon Complaint alleges that The Kenmore Club permits Westward to collect its reasonable fee for providing the documents to condo sellers and not impose their own fee and that Kenmore Club did authorize Westward to charge condo sellers excessive and unreasonable fees for those documents.

21.     The Underlying Plaintiffs assert that Westward is using the cost shifting provision of the Illinois Condominium Act to make unlawful profits. The Underlying Plaintiffs allege that Westward used its assumed duty to manage and provide documents to sellers as an opportunity to "shake down' individual condo sellers for profit rather than bargaining for its benefits with the Board of Managers via its Property Management Agreement.  A copy of the Property Management Agreement is attached as Exhibit 2.

22.     The Channon Complaint further asserts that Westward did not comply with the reasonable fee for out-of-pocket costs for providing disclosure documents but rather, charged oppressive fees.

23. With regard to the purported class, the Underlying Plaintiffs assert that Westward's acts caused substantial injury to consumers because the Channons and putative class members are forced to pay the fees to obtain the documents.

24. The Channon Complaint alleges that the "Class Definition" is defined as follows:

> All persons who sold or attempted to sell a condominium unit in a condominium association managed by Defendant where the purchaser(s) demand that seller(s) provide the legally required disclosure information listed in 765 ILCS 605/22.1, compelling the seller(s) to pay Defendant what is supposed to be a "reasonable fee" to obtain this information from Defendant.

25. The Underlying Plaintiffs bring several causes of action against Westward for Violation of the Illinois Condominium Act, Violation of the Illinois Consumer Fraud and Deceptive Business Practices Act on their own behalf and on behalf of all persons who sold or attempted to sell a condominium in a condo association managed by Westward.

26. The Underlying Plaintiffs assert that the class is likely to consist of hundreds if not thousands of individuals due to Westward's management of numerous condo associations in the Chicago Metropolitan area. The Underlying Plaintiffs seek disgorgement from Westward of any ill-gotten gains, as well as compensatory and punitive damage, and attorney's fees.

27. Westward did not provide the Channon Complaint to Travelers.

28. On February 1, 2022, Westward filed a Third-Party Complaint (the "TPC") against Kenmore in the Underlying Litigation seeking indemnity and other relief. A copy of the TPC is attached as Exhibit 3.

29. The TPC alleges that the Property Management Agreement between Kenmore Club and Westward contains an indemnity provision in which the Kenmore Club agreed to indemnify Westward from any and all loss, including attorney's fees, in connection with the management of the Property.

30.     Westward alleges that it tendered its defense of the Channon Complaint to Kenmore Club's officers on November 24, 2020 (the "Westward Claim"), but to date it has not received any substantive response from Kenmore Club.

31.     In the TPC, Westward asserts that Kenmore Club is in breach of the Property Management Agreement.

32.     Kenmore Club did not report that it had received the Westward Claim to Travelers until March 21, 2022.

## THE TRAVELERS GENERAL LIABILITY POLICIES

33.     Travelers Casualty Insurance Company of America issued a general liability policy No. 680-7H134141-21-42 to "The Kenmore Club," with a policy period of October 26, 2021-2022.

34.     The 2021-22 Policy is a renewal of policies that incepted on October 26, 2015 and that were renewed on a yearly basis.[2]

35.     As the Travelers policies total over 1000 pages with numerous irrelevant coverages, only the relevant portions of the Policies are attached hereto as Exhibit 4.  Each of the policies contain substantially similar policy language.

36.     The Policies contain Commercial General Liability Coverage Form (that contains **SECTION I** coverages, which provide in pertinent part:

> **SECTION I – COVERAGES**
>
> **COVERAGE A - BODILY INJURY AND PROPERTY DAMAGE LIABILITY**
>
> **1.      Insuring Agreement**
>
> **a.**      We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies.  We will have the right and duty to

---

[2] Due to their voluminous nature copies of the certified policies will be provided upon request.

defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

**(1)** The amount we will pay for damages is limited as described in Section **III** – Limits Of Insurance; and

**(2)** Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C**.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B**.

**b.** This insurance applies to "bodily injury" and "property damage" only if:

**(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the coverage territory";

**(2)** The "bodily injury" or "property damage" occurs during the policy period; and

\* \* \*

**c.** "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph **1.** of Section II - Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

**d.** "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph **1.** of Section II — Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

\* \* \*

**(2)** Receives a written demand or verbal demand or claim for damages because of the "bodily injury" or "property damage" or

**(3)** Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

8

37.     **COVERAGE A** contains the following exclusions:

    **2.**    **Exclusions**

    This insurance does not apply to:

    **a.**    **Expected or Intended Injury**

    "Bodily injury" or "property damage" expected or intended from the standpoint of the insured.  This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

    **b.**    **Contractual Liability**

    "Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

    (1)    That the insured would have in the absence of the contract or agreement; or

    **(2)**    Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorneys' fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

    **(a)**    Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

    **(b)**    Such attorneys' fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in damages to which this insurance applies are alleged.

38.     The Policies also contains **COVERAGE B** which provide in relevant part:

**COVERAGE B – PERSONAL AND ADVERTISING INJURY LIABILITY**

**1.**    **Insuring Agreement**

    **a.**    We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages.

However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result. But:

    **(1)** The amount we will pay for damages is limited as described in Section **III** - Limits Of Insurance; and

    **(2)** Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C**.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B**.

    **b.** This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

39. The Policies contain **SECTION II**, which provide in relevant part:

**SECTION II – WHO IS AN INSURED**

1. If you are designated in the Declarations as:

            \*     \*     \*

    d. An organization other than a partnership, joint venture or limited liability company, you you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

            \*     \*     \*

**2.**     **b.** Any person (other than your "employee" or "volunteer worker"), or any organization, while acting as your real estate manager.

40. The Policies contain **SECTION V – DEFINITIONS**, which provide in relevant

part:

G. **ADDITIONAL DEFINITIONS**

The following is added to the **DEFINITIONS** Section:

"Advertising injury":

**a.** Means injury, other than "personal injury", caused by one or more of the following offenses:

**(1)** Oral or written publication, including publication by electronic means, of material in your "advertisement" that slanders or libels a person or organization or disparages a person's or organization's goods, products or services, provided that the claim is made or the "suit" is brought by a person or organization that claims to have been slandered or libeled, or that claims to have had its goods, products or services disparaged;

**(2)** Oral or written publication, including publication by electronic means. of material in your "advertisement" that:

**(a)** Appropriates a person's name, voice. photograph or likeness; or

**(b)** Unreasonably places a person in a false light: or

**(3)** Infringement of copyright. "title" or "slogan" in your "advertisement", provided that the claim is made or the "suit" is brought by a person or organization that claims ownership of such copyright, "title" or "slogan".

**b.** Includes "bodily injury" caused by one or more of the offenses described in Paragraph **a.** above.

\* \* \*

H. **EXTENSION OF COVERAGE – BODILY INJURY**

\* \* \*

"Bodily injury" means bodily injury, mental anguish, mental injury, shock, fright, disability, humiliation, sickness or disease sustained by a person, including death resulting from any of these at any time.

\* \* \*

**9.** "Insured contract" means:

\* \* \*

**f.** That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in

connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

\* \* \*

**13.** "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions;

\* \* \*

## G. ADDITIONAL DEFINITIONS

\* \* \*

"Personal injury":

**a.** Means injury, other than "advertising injury", caused by one or more of the following offenses:

    **(1)** False arrest, detention or imprisonment;

    **(2)** Malicious prosecution;

    **(3)** The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, provided that the wrongful eviction, wrongful entry or invasion of the right of private occupancy is committed by or on behalf of the owner, landlord or lessor of that room, dwelling or premises;

    **(4)** Oral or written publication, including publication by electronic means, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services, provided that the claim is made or the "suit" is brought by a person or organization that claims to have been slandered or libeled, or that claims to have had its goods, products or services disparaged; or

    **(5)** Oral or written publication, including publication by electronic means, of material that:

        **(a)** Appropriates a person's name, voice, photograph or likeness; or

        **(b)** Unreasonably places a person in a false light.

**b.** Includes "bodily injury" caused by one or more of the offenses described in Paragraph **a.** above.

\* \* \*

12

17. "Property damage" means:

    **a.**    Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use will be deemed to occur at the time of the physical injury that caused it; or

    **b.**    Loss of use of tangible property that is not physically injured. All such loss of use will be deemed to occur at the time of the "occurrence" that caused it.

For the purposes of this insurance, electronic data is not tangible property.

41. The Policies also include the following notice provisions:

    **2.**    **Duties In The Event Of Occurrence, Offense, Claim or Suit.**

    **a.**    You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

        **(1)**.    How, when and where the "occurrence" or offense took place.

        **(2)**.    The names and address of injured persons and witnesses; and

        **(3)**    The nature and location of any injury or damage arising out of the "occurrence" or offense.

    **b.**    if a claim is made or "suit" is brought against any insured, you must:

        **(1)**    Immediately record the specifics of the claim or "suit" and the date received; and

        **(2)**    Notify us as soon as practicable.

You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

    **c.**    You and any other involved insured must:

        **(1)**    Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit".

        **(2)**    Authorize us to obtain records and other information.

        **(3)**    Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

*   *   *

    **d.**    No insured will, except that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

13

42. The Policies, incepting after October 26, 2017 contain claims-made Directors & Officers Liability endorsement (CG D0 28 10 91) and Illinois- Directors and Officers - Amendatory Endorsement (CG D0 62 06 15) that provides in pertinent part:

**1.** The Following Replaces Paragraphs **A., B.** and **C.** of **I. Insuring Agreement - Directors and Officers and Condominium Associations Liability:**

    **A**. We will pay those sums that the insured becomes legally obligated to pay as compensatory damages because of any "wrongful act" to which this insurance applies. We will have the right and duty to defend any "suit" seeking those damages. We will also have the right and duty to defend any "suit" seeking non-monetary damages because of any "wrongful act" to which this insurance applies. We may at our discretion investigate any "wrongful act" and settle any claim or "suit" that may result. But:

*   *   *

    **B.** This insurance applies to "wrongful acts" committed at any time prior to the end of the coverage period, but only if:

        **(1)** The "wrongful act" took place in the "coverage territory"; and

        **(2)** A claim for compensatory damages or non-monetary damages because of the "wrongful act" is first made against any insured, in accordance with paragraph **C.** below, during the coverage period or any Extended Reporting Period we provide...

    **C.** A claim by a person or organization seeking compensatory damages or non-monetary damages will be deemed to have been made at the earliest of the following times:

        **(1)** When notice of such claim is received by any insured or by us, whichever comes first; or

        **(2)** When we make settlement in accordance with paragraph **A** above.

    All claims arising out of the same or related "wrongful acts" will be deemed to have been made at the time the first of these claims is made against any insured.

*   *   *

**D.** **Exclusions**

The insurance provided by this endorsement does not apply to:

**(1)** "Bodily injury," "property damage," "personal injury," or "advertising injury."

**(2)** Punitive or exemplary damages.

**(3)** Damages resulting from:

**a.** "Wrongful acts" which result in any insured gaining personal profit, remuneration or advantage to which such insured is not legally entitled.

**b.** Any dishonest, fraudulent, criminal or malicious act, error or omission committed by or with the knowledge or consent of any insured.

\* \* \*

**f.** The failure of any insured to enforce the rights of the Named Insured against the builder, sponsor or developer of the property designated in the Declarations.

\* \* \*

**h.** The "wrongful act" of any developer/sponsor who is an officer or member of the condominium, or other community association, board of directors.

**i.** Any claim or "suit" made by any insured against another insured.

\* \* \*

43.     The Directors and Officers coverage part is written on a claims made basis and requires immediate notice of claims and suits, as follows:

**IV.** Conditions

\* \* \*

**C.** **Insured's Duties In The Event Of A Wrongful Act, Claim or Suit.**

**1.** In the event of a "wrongful act", you must see to it that we are notified as soon as is practicable. To the extent possible, notice should include:

**a.** How, when and where the "wrongful act" took place.

**b.** The nature of the "wrongful act"; and

**c.** The names and address of injured parties and witnesses.

Notice of such a "wrongful act" does not constitute notice of a claim.

2.  If a claim is received by any insured, you must immediately record the specifics of the claim and the date received and notify us immediately. Written notice should be provided as soon as is practicable.

3.  You and any other involved insured must:

    a.  Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or a "suit";

    b.  Authorize us to obtain records and other information;

    c.  Cooperate with us in the investigation of any "wrongful act," or the investigation, settlement or defense of the claim or "suit"; and

    \*   \*   \*

4.  No insureds will, except at their own cost, voluntarily make a payment, assume any obligation, or incur any expense without our consent.

44.  The **ILLINOIS - DIRECTORS AND OFFICERS - AMENDATORY ENDORSEMENT** (CG D0 62 06 15) contains the following exclusion:

    k.  Breach of any oral, written or implied contract or agreement, including any liability of others assumed by an insured under any such contract or agreement.

        However, this exclusion does not apply to:

    (i)  Defense of any "suit" seeking such damages; or

    (ii)  Liability the insured would have in the absence of the contract or agreement.

45.  The Directors and Officers coverage part also contains the following exclusion:

    (5)  Damages resulting from:

        a.  Any claim made or "suit" brought prior to or pending as of the inception date of the coverage period, as shown in the Declarations. However, if this insurance is a renewal of the same or similar coverage provided by us, this exclusion applies to claims made or "suits" brought prior to or pending as of the date such coverage was first provided by us.

16

    **b.**    Any subsequent claims made or "suits" brought which arise from or are based upon substantially the same matters as alleged in the pleadings of such prior or pending claims or "suits."

    **c.**    Any act of any insured which gave rise to such prior or pending claim or "suit."

    **d.**    Any claim or "suit" which may be reasonably anticipated as of the inception date of the coverage, as shown in the Declarations.

46. The Directors and Officers coverage part contains the following **SECTION V – DEFINITIONS**, provides in relevant part:

**V.**    **DEFINITIONS**

\*   \*   \*

**F.**    "Property damage" means:

    **1**.    Physical injury to tangible property, including all resulting loss of use of that property;

    **2.**    Loss of use of tangible property that is not physically injured; or

    **3.**    Diminution of property value

\*   \*   \*

**G.**    "Suit" means a civil proceeding in which damages because of a "wrongful act" to which damages because of a "wrongful act" to which this insurance applies are alleged. "Suit" includes:

\*   \*   \*

**H**.    "Wrongful act" means any actual or alleged error, mistake, misstatement or misleading statement, act, omission or neglect or breach of duty by any insured.

47. The **ILLINOIS - DIRECTORS AND OFFICERS - AMENDATORY ENDORSEMENT** (CG D0 62 06 15) also contains the following definition:

**4.**    The following replaces **II. WHO IS AN INSURED:**

**II.**    **WHO IS AN INSURED**

\*   \*   \*

**D.**    Your managing agent and their employees are also insureds, but only while acting within the scope of their duties for you.

## COUNT I
### (NO DEFENSE OR INDEMNITY OWED TO KENMORE CLUB)

## GENERAL LIABILITY COVERAGE FORM

48.     Travelers hereby incorporates by reference Paragraphs 1-47 of this Complaint as if each was fully set forth herein.

49.     Westward asserts that Kenmore Club is in breach of the indemnity provision of the Property Management Agreement and seeks defense costs and monies paid for any settlement or judgment rendered against it for any violation of the Illinois Property Condominium Act  and Consumer Fraud and Deceptive Business Practices Act.  Plaintiffs alleged that they were forced to pay oppressive fees to obtain documents in the Underlying Litigation.

50.     No coverage exists  under the General Liability Coverage Form available to Kenmore Club for the TPC and the claims alleged in the Underlying Litigation because they  do not seek damages because of "bodily injury" or "property damage" caused by an "occurrence" or "personal injury" or "advertising injury" as those terms are defined in the Policies.

51.     The Kenmore Club waited over a year to notify Travelers of the Westward's TPC. Consequently, it is in breach of the notice provisions of the policy and coverage is forfeited.

52.     Punitive damages are not insurable as a matter of Illinois public policy.

## D&O LIABILITY ENDORSEMENT

53.     Subject to all the policy terms, pursuant to the Directors and Officers Liability Endorsement (the "D&O Endorsement") as Amended by the Illinois-Directors and Officers – Amendatory Endorsement, Travelers is obligated to pay only those sums that the insured becomes legally obligated to pay as compensatory damages because of any "wrongful act" to which this insurance applies and would only have a duty to defend any "suit" seeking non-monetary damages because of any "wrongful act" to which this insurance applies.

54. This insurance applies to "wrongful acts" committed at any time prior to the end of the coverage period but only if a claim for compensatory damages or non-monetary damages because of the "wrongful act" is first made against any insured during the coverage period. A claim by a person or organization seeking compensatory damages will be deemed to have been made when notice of such claim is received by any insured or by us, whichever comes first.

55. Westward received the Channon Demand in July of 2017. The first policy with D&O Liability coverage incepted on October 26, 2017 Therefore, the claim was first made before the inception date of the Directors and Officers coverage issued to Travelers and not during any policy period and the insurance does not apply.

56. Kenmore Club first received notice of Westward's TPC no later than November of 2020. Therefore, to the extent this notice is when the claim was first made, **which we deny**, it falls within the October 26, 2020 to 2021 policy period and the insurance does therefore not apply.

57. The Westward Claim and the TPC are excluded from coverage under exclusion **(5) a.-d.** because, among other things, they result from acts and claims that took place prior to the inception of the Policies.

58. Pursuant to exclusion **D.(2)** in the Policies and Illinois public policy, any claim for punitive damages is excluded and is not insurable as a matter of law.

59. Kenmore Club is a named insured under the Policies. With respect to the claims asserted against Kenmore Club in the TPC, Westward qualifies as an insured under the Illinois-Directors and Officers Amendatory Endorsement which makes Kenmore Club's managing agent insured while in the course of their duties for Kenmore Club. No coverage exists because Exclusion D.(3) specifically precludes coverage for any claim or suit made by an insured against another insured.

60.     Westward seeks damages for breach of a contractual indemnity provision contained in the Property Management Agreement. Exclusion D.(3)k. precludes any duty to indemnify for any breach of any oral, written or implied contract or agreement, including any liability of others assumed by an insured under such contract.

61.      Lastly, the Kenmore Club never reported the Channon Demand and waited over a year to notify Travelers of the Westward's TPC.  Consequently, it is in breach of the notice provisions of the policy and coverage is forfeited.

62.     An actual dispute exists as to whether Travelers has no duty to defend or indemnify Kenmore Club for the Underlying Litigation or the TPC, and this Court is vested with the authority to find and declare that Travelers owes no duty to defend or indemnify Kenmore Club for any of the matters alleged in the Underlying Litigation or the TPC.

**WHEREFORE**, Plaintiff, Travelers, prays for entry of an order declaring as follows:

a.     It does not owe Kenmore Club a defense or indemnity with regard to the Underlying Litigation; and

b.     Such other relief as the Court deems just and proper.

## COUNT II
### (WESTWARD)
### (NO DEFENSE OR INDEMNITY OWED)

## GENERAL LIABILITY COVERAGE FORM

63.     Travelers hereby incorporates by reference Paragraphs 1-62 of this Complaint as if each was fully set forth herein.

20

64.     The Underlying Plaintiffs assert that Westward is in violation of the Illinois Condominium Act, the Illinois Consumer Fraud and Deceptive Business Practices Act. Plaintiffs alleged that they were forced to pay oppressive fees to obtain documents.

65.     There is no coverage under the General Liability Coverage Form available to the Westward for the Channon Complaint because the Underlying Litigation is not seeking damages because of "bodily injury" or "property damage" caused by an "occurrence" or "personal injury" or "advertising injury" as those terms are defined in the Policies.

66.     The plaintiffs seek disgorgement of ill-gotten gains. This does not constitute damages as required by the insuring agreement. n addition, coverage for the Channon Complaint is barred by the contractual liability exclusion in Coverages A and B because there are no allegations that the Underlying Complaint is seeking claims for tort damages.

67.     Coverage is otherwise precluded by the expected or intended exclusion.

68.     Punitive damages are not insurable as against Illinois Public Policy.

### **DIRECTORS & OFFICERS LIABILITY ENDORSEMENT**

69.     Subject to all the policy terms, pursuant to the Directors and Officers Amendatory Endorsement (the "D&O Endorsement"), Travelers is obligated to provide coverage for only those sums the insured becomes legally obligated to pay as damages because of any "wrongful act" to which its insurance applies.

70.     Westward received the Channon Demand in July of 2017. The first policy with D&O Liability coverage incepted on October 26, 2017   Therefore, the claim was first made before the inception date of the Directors and Officers coverage issued to Travelers and not within the policy period. Therefore, the insurance does not apply.

71.     Westward was served with the Channon Complaint in May of 2019  Therefore, to the extent this notice is when the claim was first made, **which we deny**, it falls within the October 26, 2018 to October 26, 2019 policy period and is not covered under that policy.

72.     The Channon Complain is excluded from coverage under exclusion **(5) a.-d.** because, among other things, they result from acts and claims that took place prior to the inception of the Policies.

73.     Pursuant to exclusion **D.(2)** in the Policies and Illinois public policy, any claim for punitive damages is excluded and is not insurable as a matter of law.

74.     The plaintiffs assert a Violation of the Illinois Consumer Fraud and Deceptive Business Practices Act. Coverage is precluded by exclusion D.(3).a. which provides that the insurance does not apply to damages resulting from any dishonest, fraudulent, criminal or malicious act , error or omission committed by or with the knowledge or consent of the insured

75.     Exclusion D.(3) b. applies to the claims for ill-gotten gains and precludes coverage for damages resulting from a "wrongful act" which results in personal profit, remuneration or advantage to which such insured is not legally entitled.

76.     Kenmore Club is a named insured under the Policies. With respect to the claims asserted against Kenmore Club in the TPC, Westward qualifies as an insured under the Illinois-Directors and Officers Amendatory Endorsement which makes Kenmore Club's managing agent insured while in the course of their duties for Kenmore Club. No coverage exists because Exclusion D.(3) i. specifically precludes coverage for any claim or suit made by an insured against another insured.

77.     Westward never reported the Channon Demand or the Channon lawsuit to Travelers.  Consequently, it is in breach of the notice provisions of the policy and coverage is forfeited.

78.     To the extent Westward has coverage under the Policies, which Travelers denies, Westward is an insured for only those wrongful acts committed while acting within the scope for the Kenmore Club and thus Westward has no coverage for damages arising from any acts for other condominium associations.

79.     An actual dispute exists as to whether Travelers has no duty to defend or indemnify Westward against the Underlying Litigation, and this Court is vested with the authority to find and declare that Travelers owes no duty to defend or indemnify Westward for any of the claims alleged in the Underlying Litigation.

**WHEREFORE**, Plaintiff, Travelers, prays for entry of an order declaring as follows:

a.      Travelers has no duty to defend or indemnify Kenmore or Westward with respect to the Underlying Litigation

b.      Such other relief as the Court deems just and proper.


Dated: February 24, 2023

Respectfully submitted,

TRAVELERS CASUALTY INSURANCE COMPANY OF AMERICA

By: */s/ John P. O'Malley*
      One of Its Attorneys

John P. O'Malley
**KARBAL, COHEN, ECONOMOU, SILK & DUNNE, LLC**
200 South Wacker Drive, Suite 2550
Chicago, Illinois 60606
Tel:     (312) 431-3700
Fax:     (312) 431-3670
jomalley@karballaw.com