# EXHIBIT 1

FILED
4/16/2019 4:51 PM
DOROTHY BROWN
CIRCUIT CLERK
COOK COUNTY, IL
2019CH04869
  4715595

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT – CHANCERY DIVISION

HARRY CHANNON and DAWN CHANNON,   )
individually and on behalf of all others   )
similarly situated,   )
   )
      *Plaintiffs*,   )
   )
      v.   )
   )
WESTWARD MANAGEMENT, INC.,   )
an Illinois Corporation,   )
   )
      *Defendant*.   )

No.  **2019CH04869**

**JURY DEMAND**

## CLASS ACTION COMPLAINT

Plaintiffs HARRY CHANNON and DAWN CHANNON (the "Channons" or "Plaintiffs"), on behalf of themselves and all others similarly situated, by and through their counsel, Jeffrey C. Blumenthal Chartered and Greenswag & Associates, P.C., for this action against Defendant WESTWARD MANAGEMENT, INC., an Illinois Corporation ("Westward Management," "Westward" or "Defendant"), states as follows:

### INTRODUCTION

1.    Plaintiffs bring this suit on behalf of themselves and a similarly situated class of individuals who, when selling their condominium units, were effectively compelled to pay Westward Management's unreasonable and excessive fees to obtain copies of certain records that the Illinois Condominium Property Act (the "Condo Act" or "Act") requires condominium sellers to provide prospective buyers pursuant to Section 22.1 of the Act. 765 ILCS 605/1, *et seq.*

2.    Condominium sellers are statutorily required to obtain disclosure documents from their Condo Association Board of Managers or its managing agent, which, in this case is Westward, by paying them a reasonable fee for the actual costs of providing the documents. Condo sellers must then provide the documents to the prospective buyer.

FILED DATE: 4/16/2019 4:51 PM   2019CH04869

3.      Condo sellers are thus beholden to property management companies who have complete control over disclosure documents by virtue of their management contracts or agreements with Condo Associations.

4.      Westward allegedly uses its position of entrustment with disclosure documents as leverage to abuse condo sellers who are often involved in time-sensitive real estate transactions and have no other reasonable option but to pay whatever fee Westward chooses to charge, or risk their own potential liability under the Condo Act by not providing the documents to prospective buyers at all, or providing deficient disclosure documents.

5.      Disclosure documents under Section 22.1 of the Illinois Condominium Property Act (the "Act") are financial statements setting forth various aspects of the Association's financial condition and other statements related to the unit, which include: (1) current and anticipated capital expenditures of the association, (2) amount of assets held in the association's reserve fund, (3) insurance coverage requirements, (4) liens on the unit, (5) improvements or alterations made to the unit, (6) amounts of unpaid assessment fees and other charges due, (7) statement of the status of any pending lawsuit or judgments to which the association is a party, (8) governing documents of the association such as the declaration, bylaws, and rules and regulations, and (9) the identity and mailing address of the association's agent specifically designated to receive notices.

6.      Westward is the property management agent for the Kenmore Club Condominium Association ("Kenmore Club" or "the Association").

7.      Westward is Kenmore Club's  agent in connection with the financial management and record keeping of documents described in Section 22.1 of the Act. Westward is also the Association's designated agent in connection with the resale and transfer of ownership of a condominium unit within the Association's Property, which includes the process, procedures, and

2

FILED DATE: 4/16/2019 4:51 PM    2019CH04869

documents described under Section 22.1 "Resales; disclosures; fees."

8. Like many other Condo Associations in Illinois, Kenmore Club's resale process requires condo sellers, such as Plaintiffs, to notify the Association's managing agent, in this case Westward Management, of the intent to sell their condo unit. The seller is then required to request directly, and must obtain disclosure documents, from their Association's "other officer as is specifically designated [to] furnish [Section 22.1 disclosure documents] when requested to do so in writing and within 30 days of the request." 765 ILCS 605/22/1(b).

9. The Association is not able to provide the disclosure documents to the condo seller. The Association's designated agent, Westward, manages disclosure documents as part of the agent's professional financial management services to the Association. (A copy of Westward's website detailing financial management services it offers to Condo Associations is attached as **Exhibit A**).

10. Section 22.1 is not only about providing documents; it is about the *management* of disclosure documents. Such management involves an ongoing process and professional expertise in the requirements of the Condo Act and the financial management, record keeping, stability, and security of the Condominium Association.

11. Condo owners are not required to be CPA's, lawyers, maintenance repair persons, landscapers, or real estate sales experts to be a Board Manager. The lack of knowledge, ability, and/or expertise in the various duties, such as financial management of the documents described in Section 22.1(a)(1)-(9) of the Act, does not preclude a condo owner from serving on the Board because he or she can still comply with their duties under the Act by retaining professionals, such as Westward, who do have the skills, knowledge, and expertise necessary to assist the Board in complying with their duties under the Condo Act. 765 ILCS 605/18(a)(5).

FILED DATE: 4/16/2019 4:51 PM   2019CH04869

12.     For example, the Association and its Board of Managers have the duty to physically maintain the common areas of the property. 765 ILCS 605/18.4(a).  If the Board Manager was elderly or disabled and could not physically comply with the duty to repair, he or she be would not be excluded from consideration as a Board Member due to his limitations because the Association can contract with professional services to satisfy that duty, such as Kenmore Club did here when it retained Westward to manage and provide disclosure documents to condo sellers who so demand.

13.     When an agent, such as Westward, does not comply with the duties of his principal-Association, it does not automatically infer that the Association Board of Managers is second in line to carry out the obligation. The Kenmore Club Board of Managers still has no knowledge or *ability* to carry out this duty.  It is not reasonable to expect that if the Association's designated agent for maintenance services refuses to fix the leaky roof in the common area of the Property, Board Managers must then become professional roofers to comply with their duties under the Condo Act.

14.     In this case, the Association contracted with Westward to comply with the duties set out under Section 22.1, but Westward has not complied with the duty to charge only a reasonable fee for out-of-pocket costs for providing disclosure documents under Section 22.1(c). 765 ILCS 605/22.1(c). Just because Westward does not want to comply with the reasonable fee requirement, does not mean that the Association Board Managers are any more equipped to manage Section 22.1 documents than they were when Westward was first retained.  Without the ability to *manage* the documents, the Board Managers are unable to provide them to condo sellers with any degree of accuracy.

FILED DATE: 4/16/2019 4:51 PM   2019CH04869

15.     Custom and practice in the condo industry is to contact the management agent of the Association, not the Board of Managers.  Even if the seller were to first request the documents directly from the Association, the Association would direct the seller to Westward to obtain disclosure documents.  Requiring the seller to first request disclosure documents from the Association, only to be directed to Westward, creates an unnecessary step and exchange of hands at the tail-end of a time-sensitive real estate transaction, and may cause sellers to risk losing a sale if a potential buyer pulls out of a deal while waiting for disclosure documents.

16.     Further, it is a question of statutory interpretation whether under Section 22.1(a) the Association is able to demand disclosure documents from Westward on the seller's behalf. Section 22.1 of the Condo Act only mentions the unit owner as having a duty to *demand* and *obtain* disclosure documents on behalf of the prospective buyer.  Whereas the Board of Managers' duty under Sections 22.1 (a) and (b) is to *provide* the documents to the unit owner. 765 ILCS 605/22.1(a), (b).

17.     Requiring the Association to demand documents on the seller's (or prospective buyer's) behalf opens the Association to potential liability to the prospective buyer, whereas Section 22.1 has been interpreted to limit liability between the seller and prospective buyer regarding the accuracy, completeness, and providing of disclosure documents.

18.     There is little value to retaining management companies that expose the Association, such as Kenmore Club and its Board of Managers, to liability because of non-compliance and unscrupulous business decisions regarding the very law regulating the principal Association and its Board of Managers.  The value of management companies, such as Westward, *is* their compliance services with the Condo Act, and necessarily requires strict adherence to the

FILED DATE: 4/16/2019 4:51 PM    2019CH04869

duties, obligations, and limitations governing Condo Associations, such as Kenmore Club and their Board Managers, under Section 22.1 of the Act.

19.     Alternatively, the seller may complain to the Association about the excessive and unreasonable fees charged by Westward prior to closing, yet the Association is still in no position to provide the documents to the seller without first obtaining them from Westward.  Assuming the Association is even able to demand the documents from Westward on the seller's behalf (and assuming Westward would comply with the Association's demand), the fee Westward would charge the Association is the same fee it charges condo sellers—unreasonable and beyond "direct out-of-pocket costs."   The Association is therefore forced to either potentially violate Section 22.1's "reasonable fee" restriction by recouping Westward's unreasonable fee from the condo seller, or forced to waste the Association's assets, thus breaching their duty of care, by not recouping Westward's fee at all every time a condo owner sells their unit to comply with their statutory duty under the Condo Act to provide disclosure documents to the seller. 765 ILCS 605/22.1(b).  In either scenario, the seller's transaction is threatened, the seller is harmed, and the Association is harmed either financially or through expanded potential liability from various parties.

20.     Westward is compensated for assuming a number of duties—including managing and providing disclosure documents to condo sellers.  The management contract is between the Association and Westward—not between individual condo owners and Westward.  Westward is using its' assumed duty to manage and provide documents to sellers as an opportunity to "shake down" individual condo sellers for profit rather than bargaining for its benefits with the Association's Board of Managers during the formation stage of the management contract or agreement.

FILED DATE: 4/16/2019 4:51 PM   2019CH04869

21.     The Association does not manage or provide Section 22.1 disclosure documents to condo sellers.  Westward assumed the duty and obligation, among others, to manage documents identified in Section 22.1 as the Agent for the Association.  Westward is the Association's "other officer as is specifically designated" under Section 22.1(b) and charged with the statutory responsibility to both *manage* and *provide* disclosure documents to condo sellers upon demand.

22.     Although Section 22.1(c) of the Act provides only that "[a] reasonable fee covering the direct out-of-pocket cost of providing such information and copying may be charged by the association or its Board of Managers to the unit seller for providing such information," Westward charges condo sellers excessive and unreasonable fees to obtain disclosure documents under the guise that it has authority to do so via its contract or management agreement with the Association and/or under Section 22.1(c) of the Act.

23.     At most, the Association permits Westward to collect its reasonable fee for providing the documents to condo sellers—not impose their own fee. This is because agents, like Westward, are only able to charge unit owners a fee if it is on behalf of the Association and with authorization either from the Association Board of Managers and/or the Condo Act.

24.     On information and belief, the only fees Westward is authorized to charge and receive from condo owners are those in connection with their services to the Association under the terms of their contract or management agreement with the Association.

25.     On information and belief, the Association did not authorize Westward to charge condo sellers excessive and unreasonable fees to provide condo sellers disclosure documents held in their care and custody.

26.     Section 22.1(c) does not authorize management agents, such as Westward, to charge a fee for providing disclosure documents to condo sellers. Section 22.1(b) only permits the

designated agent to provide the documents, but does not state that the designated agent may charge any fee whatsoever. 765 ILCS 605/22.1(c). If Westward is not providing these documents and charging on behalf of the Association (not giving the Association any of the fees it collected from unit sellers), Westward is then abusing the Association's property (the documents) to make a profit outside of the management contract or agreement, and in violation of Section 22.1(c).

27.     By virtue of its management contract or agreements with the Association, Westward exercises dominion and control over the Association's disclosure documents and does not disclose their "actual cost" of providing the documents to condo sellers. Thus, on information and belief, Westward is only able to provide disclosure documents to condo sellers precisely because it is an Agent of the Association. Westward assumed the duty to manage the documents identified in Sections 22.1(a)(1)-(9) under its contract or agreement with the Association, and therefore, possess and controls the Association's disclosure documents.

28.     For the most part, Westward can provide disclosure documents immediately to the unit seller because they are stored in an electronic database managed and controlled by Westward.

29.     Westward sets pre-determined fees for "each" 22.1 disclosure item—regardless of the length of the document or method of delivery.

30.     Westward does not itemize its charges, or otherwise state the basis for how it determined the amount charged for these documents.

31.     Plaintiffs bring this action against Westward to recover the unreasonable fees paid which Westward unlawfully charged Plaintiffs and other similarly situated sellers in violation of the Section 22.1(c) of the Condo Act. Plaintiffs seek interest, attorney's fees and costs owed to them and other similarly situated persons.

FILED DATE: 4/16/2019 4:51 PM   2019CH04869

FILED DATE: 4/16/2019 4:51 PM    2019CH04869

32.     As set forth below, Westward's predatory practice of price gouging captive condo sellers with unreasonable fees to obtain access to disclosure documents they are required by statute to provide prospective buyers to close on the sale of their unit or risk legal liability for noncompliance with their duty under the statute, gives rise to Plaintiff and the Class' claims alleged herein.

## JURISDICTION AND VENUE

33.     Jurisdiction over Defendant is proper under 735 ILCS 5/2-209(a)(1) (transaction of any business within the State) and 735 ILCS 5/2-209(b)(3) (corporation organized under the laws of this State).

34.     Venue is proper in this Court pursuant to 735 ILCS 5/2-101, because the transaction(s), or a substantial part thereof, occurred in Cook County and Defendant an Illinois corporation doing business in Cook County. 735 ILCS 5/2-102(a).

## PARTIES

35.     Plaintiffs are natural persons and citizens of the State of Illinois at all times relevant to the events detailed herein.

36.     Defendant is a corporation organized in and existing under the laws of the State of Illinois, with its principal place of business located at 4311 N. Ravenswood, Suite 201 in Chicago, Illinois, 60613.

## SUBSTANTIVE ALLEGATIONS

37.     Harry and Dawn Channon were the owners of a condominium unit located at 5109 N. Kenmore Avenue, Unit 1E, in Chicago Illinois, 60640, which was part of the Kenmore Club Condominium Association for several years until April 18, 2016, when the Unit was sold.

38.     On or about February 20, 2016, Cahontas and Elizabeth Vincent (the "Vincents"), as prospective purchasers of the Channons' condominium unit, entered into a real estate contract

FILED DATE: 4/16/2019 4:51 PM   2019CH04869

(the "Real Estate Contract") with the Channons. (A copy of the Real Estate Contract is attached hereto as **Exhibit B**).

39.     Pursuant to paragraph 9 of the Real Estate Contract, and according to Section 22.1 of the Act, as sellers, the Channons were required to provide the Vincents, as prospective purchasers, with the disclosure information and documents required by 765 ILCS 605/22.1(a). Failure to provide disclosure documents to a prospective buyer with disclosure documents and/or deficient documents subjects the condo seller to potential liability under Section 22.1 of the Condo Act. (A copy of Section 22.1 of the Condo Act is attached hereto as **Exhibit C**).

40.     The Board of Managers, on behalf of the Association, is required by statute to provide the Section 22.1 disclosure documents to a requesting unit owner. 765 ILCS 605/22.1(a). The Board of Managers commonly designates this duty to a property management company, if one is retained, which is what happened here when the Association retained Westward. 765 ILCS 605/18(a)(5).

41.     On information and belief, Westward has the ability to negotiate its compensation during the bargaining phase of its contractual or management agreement with the Association.  As a professional property management business, Westward is a sophisticated party.  As such, on information and belief, Westward had an opportunity to bargain for the specific duties it was to assume, and the services it was to provide to Kenmore Club.  Westward was aware, or should have been aware, of all the duties it was assuming from the Association because Westward's professional obligations under the Condo Act and the Condo Manager Act include the duties to be knowledgeable of: (i) the Condo Act, (ii) the Illinois Not-for-Profit Corporation Act, (iii) its principal's bylaws, and (iv) any other laws pertaining to community association management. 765 ILCS 605/18.3; 605/18.7(c)(3).

FILED DATE: 4/16/2019 4:51 PM   2019CH04869

42.     Upon information and belief, throughout the entire duration of the events set forth herein, Westward was (and still is) the management Agent for Kenmore Club.

43.     At all relevant times, Westward was the agent specifically designated under Sections 22.1 (b) and (c) for the Association in connection with the service of providing disclosure documents to unit sellers upon demand as part of its management duties for the Association, and charging only a reasonable fee for the cost of providing such information to unit sellers. 765 ILCS 605/22.1 (b), (c).

44.     Property management companies, like Westward, are agents of the Association by virtue of their management contracts or agreements with them.  765 ILCS 605/18.7(b).  On information and belief, as Agent of Kenmore Club, Westward provides financial management and record keeping services, and is thereby authorized to, and in fact does, manage and control the Association's financial documents and records identified under Section 22.1(a)(1)-(9) (*i.e.*, disclosure documents).

45.     The resale process for Kenmore Club requires condo sellers to notify their Association's managing agent, in this case Westward, of the intent to sell their condo unit.  The seller is then required to request directly, and must obtain disclosure documents, from their Association's designated agent, Westward—the party who has assumed the specific statutory duty to provide the seller with Section 22.1 disclosure documents.  765 ILCS 605/22.1(b).

46.     On information and belief, Westward exclusively manages and controls Section 22.1 disclosure documents on behalf of the Association in an electronic database, most of which are only accessible to Westward and its employees.[1]

---

[1] On information and belief, Westward makes the Association's Governing Documents (*i.e.*, Declaration, Bylaws, Articles of Incorporation, Rules & Regulations) available in "real time to all

FILED DATE: 4/16/2019 4:51 PM   2019CH04869

47.     The Channons, and similarly situated condo sellers, rely on Westward to provide them with accurate and comprehensive disclosure documents that comply with the mandates of Sections 22.1(a)(1)-(9) of the Condo Act because Westward is the only party authorized by the Association to manage and provide these documents to them.

48.     On information and belief, the Association is not equipped with the expertise or knowledge of the relevant legal requirements and financial management to adequately provide disclosure documents to sellers—hence, the statutory duty is delegated to Westward, a professional Association Management company. 765 ILCS 605/18(a)(5); (*See* **Exhibit A**).  Even if Plaintiffs were able to obtain disclosure documents from their Association to avoid excessive fees of Westward, Plaintiffs run the risk of receiving deficient disclosure documents.  Plaintiffs would then be subject to potential liability, because it is the *seller* that has a statutory obligation to provide such documents to potential buyers.

49.     As this statutory duty was delegated to, and assumed by Westward, condo sellers, such as the Plaintiffs herein, would not reasonably request these documents from their Association.

50.     Westward provided the Channons with a document entitled "Escrow Document Request Form." (A copy of the Escrow Document Request Form is attached as **Group Exhibit D**). The document is created by Westward and contains the company's name in the letterhead. Westward provided the Channons, and similarly situated condo unit sellers, this document on behalf of the Association.  The Escrow Request Form states in pertinent part:

> If this request is to obtain a **PAID ASSESSMENT LETTER** for a **SALE/TRANSFER of OWNERSHIP**, please fax/email: Cover Sheet, Document Request Form, Credit Authorization Form, Notice of Intent to Sell, Homeowner Information Sheet and Governing Documents Rider (entire package).

---

homeowners via [its] online portal."  However, it is unclear if Westward charges condo owners a fee (separate from Association fees) to access and download these documents in the online portal.

FILED DATE: 4/16/2019 4:51 PM    2019CH04869

Also, please provide estimated closing date: _____**4/18/16**_____ (emphasis in the original) (*See* **Group Exhibit D**).

51.    The Channons directly notified Westward, the designated Agent for their Association, of their intent to sell by submitting a standard form document entitled "Notice Of Intent To Sell." (*See* **Group Exhibit D**).  The document is created by Westward and contains the company's name in the letterhead.  Westward provided the Channons, and similarly situated condo unit sellers, this document on behalf of the Condo Association.  The Notice stated an "Anticipated Closing Date" of April 18, 2016. (A copy of the Notice of Intent to Sell is attached as **Group Exhibit D**).

52.    As part and parcel of the above referenced "package," Westward provided the Channons with a standard form document to complete entitled "Document Request Form" (*i.e.*, Order Form) for, among other things, Section 22.1 Disclosure Documents. (A copy of the "Documents Request Form" is attached as **Group Exhibit D**).  The Order Form is created by Westward and contains the company's name in the letterhead.  Westward provided the Channons, and similarly situated condo unit sellers, this document on behalf of the Association.

53.    Westward also provided the Channons, as part of the "package," a standard form document to complete entitled "Credit Card Authorization Form." (A copy of the "Credit Card Authorization Form" is attached hereto as **Group Exhibit D**).  The Authorization Form is created by Westward and contains the company's name in the letterhead.  Westward provided the Channons, and similarly situated condo unit sellers, this document on behalf of the Association.

54.    Specifically, Westward charged the Channons $75.00 for a "Condo Questionnaire/Disclosure Statement/22.1" that included providing some, but not all, Section 22.1 disclosure information.  Additionally, Westward charged the Channons $150.00 for a "Paid Assessment Letter," and $20.00 for a "Year to Date Income Statement & Budget."  In total,

13

FILED DATE: 4/16/2019 4:51 PM   2019CH04869

Westward charged the Channons Two-Hundred and Forty-Five dollars ($245.00) to provide them with information they had a statutory duty to provide the Vincents, the prospective purchasers of the condominium unit.

55.     Westward, as Agent for and on behalf of the Association, provided the Channons with a "Condominium/Townhouse Disclosure Statement," and attached some, but not all, of the Section 22.1 disclosure documents.  Alex Wiseman of Westward Management, Inc. signed the Disclosure Statement as Agent for the Association. (A copy of the "Condominium/Townhouse Disclosure Statement" is attached as **Exhibit E**).

56.     Plaintiffs' statutory obligation under Section 22.1(a) continued up through the date of closing to provide the prospective buyer with the required disclosure documents.  In this case, the closing occurred on April 18, 2016.

57.     On or about July 28, 2017, the Channons sent a letter to Westward, wherein they demanded that Westward provide information and/or documentation supporting: (a) "out-of-pocket" costs for providing disclosure documents, (b) a basis for how it determined the amount to charge for these documents, and (c) supporting documentation for the $150.00 charge for the Paid Assessment Letter and/or basis for how it determined the fee.  Westward did not respond to the Channons' demand. (A copy of the "Demand Letter" is attached as **Exhibit F**).

58.     Unit sellers, such as Plaintiffs, have a statutory duty to provide prospective purchasers all disclosure documents and statements listed in Section 22.1 of the Act.  Nonetheless, Westward prices these documents separately and misleads the unit seller to believe they can cherry pick and choose among a list of disclosure documents to provide prospective purchasers. (*See* **Group Exhibit D**).

FILED DATE: 4/16/2019 4:51 PM   2019CH04869

59. Although the statute provides only that "[a] reasonable fee covering the direct out-of-pocket cost of providing such information and copying may be charged by the association or its Board of Managers to the unit seller for providing the information," Westward's "Document Request Form" has pre-set charges for "each" 22.1 disclosure item—regardless of the length of the document or method of delivery. (*See* **Group Exhibit D**).

60. The management of disclosure documents occurs, or should occur, on an ongoing basis and well before a condo owner submits a request to Westward. Thus, Section 22.1(c)'s fee restrictions only apply to the cost associated with making those documents *available* to condo owners—for example, the cost of printing or delivery through expedited mail. 765 ILCS 605/22.1(c).

61. Westward's fee of Two-Hundred and Forty-Five dollar ($245.00) for providing the statutorily required Section 22.1 documentation is not a "reasonable fee" covering direct out-of-pocket costs for providing such information. 765 ILCS 605/22.1(c).

62. On information and belief, Westward does not itemize its charges, or otherwise state the basis for how it determines the amount charged for these documents.

63. The Channons and other similarly situated Class members cannot reasonably obtain the necessary documents to sell their unit from any other source but from Westward, and only if they provide Westward their credit card information in the Authorization Form. Plaintiffs are thus beholden to Westward and have no reasonable choice but to pay its excessive and unreasonable fees to obtain the necessary disclosure documents to sell their condominium unit and comply with their own statutory duty under the Condo Act.

64. Westward is essentially using the cost-shifting provision of 765 ILCS 605/22.1(c) to make an unlawful profit. In so doing, Westward has effectively compelled the Channons, and

15

FILED DATE: 4/16/2019 4:51 PM 2019CH04869

other similarly situated Class members, to pay this excessive and unreasonable fee to sell their condominium units, in violation of the statute and public policy of the State of Illinois.

<u>**CLASS ALLEGATIONS**</u>

65.     **Class Definition**: Plaintiffs bring this action pursuant to 735 ILCS 5/2-801 on behalf of themselves and a Class of similarly situated individuals, defined as follows:

> All persons who sold or attempted to sell a condominium unit in a condominium association managed by Defendant where the purchaser(s) demanded that seller(s) provide the legally required disclosure information listed in 765 ILCS 605/22.1, compelling the seller(s) to pay Defendant what is supposed to be a "reasonable fee" to obtain this information from Defendant.

> Excluded from the Class are: (1) Defendant, Defendant's agents, subsidiaries, parents, successors, predecessors, and any entity in which Defendant or its parents have a controlling interest, and those entities' current and former employees, officers, and directors; (2) the Judge to whom this case is assigned and the Judge's immediate family; (3) any person who executes and files a timely request for exclusion from the Class; (4) any persons who have had their claims in this matter finally adjudicated and/or otherwise released; and (5) the legal representatives, successors and assigns of any such excluded person.

66.     **Numerosity**: The exact number of Class members is unknown and is not available to Plaintiffs at this time, but individual joinder in this case is impracticable. The Class is likely to consist of hundreds, if not thousands, of individuals due to Defendant's management of a number of condominium associations in the Chicago metropolitan area.[2] Class members can be easily identified through Defendant's records or by other means.

---

[2] *See* one of Westward's websites at https://westward360.com/ which "[o]ffers community association management in Chicago for homeowners, condos, townhomes and co-op associations…" and also "offer[s] management for local Chicago single-unit condos, multi-family properties, and apartment buildings with up to 400 units."

FILED DATE: 4/16/2019 4:51 PM   2019CH04869

67.     **Commonality and Predominance**: There are several questions of law and fact common to the claims of Plaintiffs and the Class members, and those questions predominate over any questions that may affect individual class members. The common questions of law and fact for Plaintiffs and all Class members include, but are not limited to, whether Defendant's charges of amounts in excess of its "direct out-of-pocket cost[s]" for providing the disclosure information that Plaintiffs were legally obligated to obtain under 765 ILCS 605/22.1 constitutes an unreasonable and statutorily improper fee under Section 22.1 of the Illinois Condominium Property Act:

      A.  In violation of the Illinois Condominium Property Act; and/or

      B.  In violation of the Illinois Consumer Fraud and Deceptive Business Practices Act.

68.     **Adequacy of Representation**: Plaintiffs will fairly and adequately represent and protect the interests of the Class, and have retained counsel competent and experienced in complex class action litigation. Plaintiffs have no interest antagonistic to those of the Class, and Defendants has no defenses unique to Plaintiffs.

69.     **Appropriateness**: Class proceedings are also superior to all other available methods for the fair and efficient adjudication of this controversy because joinder of all parties is impracticable. Further, it would be virtually impossible for the individual members of the Class to obtain effective relief because the damages suffered by individual Class members are likely to be relatively small, especially given the burden and cost of individually conducting the complex litigation necessitated by Defendant's actions.  Even if Class members were able or willing to pursue such individual litigation, a class action would still be preferable due to the fact that a multiplicity of individual actions would likely increase the expense and time of litigation given the complex legal and factual controversies presented in this Class Action Complaint. A class action,

FILED DATE: 4/16/2019 4:51 PM    2019CH04869

on the other hand, provides the benefits of fewer management difficulties, single adjudication,

economy of scale, and comprehensive supervision by a single Court, and would result in reduced

time, effort and expense for all parties and the Court, and ultimately, the uniformity of decisions.

<u>COUNT I</u>
**(Violation of the Illinois Condominium Property Act)**

70.  Plaintiffs restates and incorporates by reference paragraphs 1 through 69 of this

Class Action Complaint as paragraph 70 as if fully set forth herein.

71.  Section 22.1 of the Illinois Condominium Property Act provides,

(a) In the event of any resale of a condominium unit by a unit owner other than the
developer such owner shall obtain from the Board of Managers and shall make
available for inspection to the prospective purchaser, upon demand . . .

(b) The principal officer of the unit owner's association *or such other officer as is
specifically designated* shall furnish the above information when requested to do
so in writing and within 30 days of the request. 765 ILCS 605/22.1(a), (b).[3]

72.  Section 22.1 (c) further provides,

(c) A *reasonable fee* covering the direct out-of-pocket cost of providing such
information and copying may be charged by the association or its Board of
Managers to the unit seller for providing such information." 765 ILCS 605/22.1(c).

73.  Kenmore Club specifically designated Westward as its Agent to provide Section

22.1 Disclosure Documents under Section 22.1(b) to the Channons and similarly situated Class

members. (*See* **Exhibit E**).

74.  Property management agents, such as Westward, exercise dominion and control

over the Association's disclosure documents and do not disclose their "actual cost" of providing

the documents to condo sellers.  Therefore, this imbalance of control over disclosure documents

provides a basis to find an implied cause of action to protect condo sellers from managing agents

that can easily take advantage of sellers under this structure.

---

[3] Emphasis added unless otherwise noted.

FILED DATE: 4/16/2019 4:51 PM    2019CH04869

75.     To protect condo sellers and buyers involved in the sale and purchase of condo units, in 1972 the legislature added Section 22, "Full disclosure before sale," to the Condo Act. Subsequently, in 1980 the legislature added Section 22.1, "Resales; disclosures; fees." 765 ILCS 605/22; 605/22.1.

76.     Under Section 22.1(c), Kenmore or its Board of Managers are restricted to charging only a "reasonable fee" covering the direct out-of-pocket costs for providing disclosure documents to condo sellers such as Plaintiffs.  765 ILCS 605/22.1(c).  The restriction has the effect of protecting both condo sellers and prospective buyers, by ensuring that sellers are not price gouged and by removing cost-prohibitive barriers to providing potential buyers with the documents to make an informed decision regarding the purchase.

77.     The purpose of the Condo Act is to govern the affairs of Illinois Condo Associations, and establish procedures for the creation, *sale*, and operation of condominiums. 765 ILCS 605/18, *et seq*.  The spirit of the Act is to protect the public ("so they know exactly what they're getting into"). (A copy of the Senate Proceedings of 77th Ill. Gen. Assem., Senate Proceedings, June 21, 1972, at 91 is attached as **Exhibit G**).

78.     The Illinois legislative record states that the Condo Act was intended to provide "the ultimate amount of consumer protection."  (A copy of the House Proceedings of 83rd Ill. Gen. Assem., House Proceedings, May 26, 1983, at 157 is attached as **Exhibit H**).  Speaker Madigan states, "The essence of the Bill [the proposed amendment overhauling the Condo Act] is to provide that regulation of condominiums statewide shall be uniform at the same time that we provide the ***ultimate amount of consumer protection***." (*See* **Exhibit H**).

79.     Section 22.1 was enacted on January 1, 1980, to address the resale of condo units. While it is undisputed that disclosure requirements imposed by Section 22 and 22.1 protects

19

FILED DATE: 4/16/2019 4:51 PM   2019CH04869

potential buyers, the legislative record demonstrates that it was also intended to protect sellers (*i.e.*, condo owners). (A copy of the 83rd Ill. Gen. Assem., House Proceedings, Jul. 2, 1983, at 4 amending the Condo Act to "strengthen[] the rights of unit owners" is attached as **Exhibit I**).

80.     Disclosure requirements necessarily protect both sellers and buyers. The prospective buyer is protected from potentially making a bad investment, whereas the condo seller's compliance with the disclosure requirements protects him or her from liability.

81.     A plain reading of Section 22.1(c) demonstrates that it was intended to protect sellers, because the fee for obtaining disclosure documents is imposed only on them. 765 ILCS 605/22.1(c).   Therefore, the statutory provision to charge only "a reasonable fee" covering the actual cost of producing disclosure documents directly impacts the seller who is statutorily charged with demanding and obtaining the documents for a cost, and may be liable for failing to make them available to potential buyers, or providing deficient disclosure documents.

82.     The overarching objective of the Condo Act is uniformity in regulation, while providing the ultimate amount of consumer protection. (*See* **Exhibit H**, at 157).   An implied private right of action against property management companies, such as Westward, who are the designated agents of condo associations, by condo sellers can be inferred because the legislative record confirms that Section 22.1 was intended to protect *both* sellers and potential buyers.

83.     The Channons are within the Class of persons the Illinois Condominium Act is designed to protect.   Plaintiffs are condominium unit sellers who have a statutory duty to provide disclosure documents to prospective buyers pursuant to Section 22.1 of the Condo Act upon selling their units. 765 ILCS 605/22.1(a).   Section 22.1(c), when read in conjunction with the Act's legislative history, clearly demonstrates that the legislature was well aware that property management agents may charge excessive fees for their services.   As a measure of protection for

20

FILED DATE: 4/16/2019 4:51 PM    2019CH04869

the seller from unscrupulous managing agents, and to ensure that the condo seller can fulfill his statutory duty to potential buyers, the legislature imposed a fee restriction for disclosure documents in Section 22.1.  Therefore, the Channons are members of the particular class of individuals for which the statute was designed to protect.

84.     Implying a cause of action in favor of condominium sellers against condominium management companies, such as Westward, who are agents of the Association, is consistent with the underlying purpose of Section 22.1: to ensure that the seller can satisfy their statutory obligation to demand and provide prospective buyers with disclosure documents.

85.     Failing to find an implied cause of action against Westward would render the Condo Act useless for all parties involved in the condo resale transaction, as it would preclude both the seller from protection against price gouging, and prevent the prospective buyer from obtaining the information held within the disclosure documents.  In addition to harming the seller through price gouging, Westward forces the seller to choose between paying an exorbitant fee and failing to provide the necessary disclosure documents to potential buyers, thus opening themselves to potential liability.  This is no real choice at all.

86.     In refusing to abide by Section 22.1(c), Westward is acting contrary to the purpose of the Act.  Westward degrades consumer protection for members of the public, specifically condo sellers and prospective buyers, by disrupting the established procedures regulating the sale of condominiums in Illinois that were intended to ensure the fair dispensation of disclosure documents.

87.     Plaintiffs' injury of being the captive victim of Westward's price gouging is precisely the kind of injury that Section 22.1(c) was designed to prevent.  The legislative history of the Condo Act demonstrates that the Act was intended to provide the "ultimate consumer

21

FILED DATE: 4/16/2019 4:51 PM    2019CH04869

protection"—which necessarily includes condo sellers in this protection.  Ultimate consumer protection encompasses sellers precisely because Section 22.1 imposes a duty on sellers to obtain disclosure documents from designated managing agents for a cost.  If the court were not to find an implied cause of action, Westward could conceivably continue charging the public higher and higher fees without limit.  Rather than limiting fees to the direct out-of-pocket cost covering the electronic transmission and/or printing of documents, as the statute demands, Westward is charging $245.00 for this service with no distinction between the actual cost for the method of delivery.

88.     Implying a private cause of action is necessary to effectuate the purpose of the statute because by failing to do so, the public—particularly condo sellers—would be left open to harm and have no recourse to enforce the "reasonable fee" provision in Section 22.1.

89.     Westward's allegedly exorbitant fees for disclosure documents violates public policy of the State of Illinois because condo sellers in Illinois are being forced to pay excessive and unreasonable fees to obtain disclosure documents they have a legal obligation to provide prospective buyers.

90.     The duty to provide disclosure documents is ascribed to the Association and managing agent, interchangeably.  The Condo Act does not make a distinction between the duties of the Association and those assumed by its agent because the statute assumes that the duties of the Association are co-extensive with those of its agent.

91.     Section 18(a)(5) of the Condo Act expressly permits professional property management companies, like Westward, to assume the fiduciary and statutory duties of the Association Board of Managers. 765 ILCS 605/18(a)(5) ("the board may engage the services of a manager or a managing agent").

FILED DATE: 4/16/2019 4:51 PM    2019CH04869

92.    Westward chose to assume the statutory duty to *manage* and *provide* disclosure documents to condo sellers, as prescribed under Sections 22.1(a) and (b) of the Condo Act.

93.    The duties of the Principal-Condo Association and that of its Agent-property management company are one and the same.  Section 18(g) of the Condo Act defines a "property management company" as,

> [A] person, partnership, ***corporation***, or other legal entity ***entitled to transact business on behalf of others***, action on behalf of or ***as an agent for*** a unit owner, unit owners or ***association of unit owners*** for the ***purpose of carrying out the duties, responsibilities, and other obligations*** necessary for the day to day operation and management of any property subject to this Act. 765 ILCS 605/18(g).

94.    Conversely, Section 18.3 of the Condo Act states the following,

> The unit owners ***association*** is responsible for the ***overall administration*** of the property through its duty elected board of managers . . . The ***association*** shall have and exercise all powers necessary or convenient to effect any or all of the ***purposes for which the association is organized*** and to do ***every other act not inconsistent with law*** which may be appropriate to promote and attain the purposes set forth in this Act or in the condominium instruments. 765 ILCS 605/18.3.

95.    While the Condo Act explicitly authorizes the Association Board of Managers to hire a management agent, such as Westward, and does not place a limit on bargained for benefits under the contract or management agreement, as long as the requirements of the Condo Act are followed, the Board may impose additional rules in its declaration or bylaws.  However, the Board of Managers may not take any action that is beyond the authority granted it under the condominium instruments and the Condominium Property Act. 765 ILCS 605/18.4.

96.    Westward's "duties, responsibilities, and obligations" are that of its principal Association—which includes complying with the Condo Act, and any other applicable laws "which may be appropriate to promote and attain the purposes set forth in this Act." 765 ILCS 605/18.3; 605/18(g).

FILED DATE: 4/16/2019 4:51 PM    2019CH04869

97.     Property management agents are assuming the very duties that the Condo Act was created to regulate.  By providing the disclosure documents to the Channons, it is evident that Westward has understood from Section 18 that this duty can be assumed by managing agents (presumably as the "such other officer as is specifically designated").  It follows then that, Westward, as Agent of the Association, which has been permitted to assume the statutory duty of the Association, and which has in fact done so, must be held to the same statutory limitations as that of the Association or Board of Managers of charging only a "reasonable fee" covering the "direct out-pocket-cost" for providing the disclosure documents.

98.     Westward is presumed to have prior knowledge of all statutory duties that it assumed by virtue of its contract or agreement with the Kenmore Club and its professional responsibilities under the Condo Act. 765 ILCS 605/18.7(c)(3), 605/18.4.  As Westward's business effectively *is* assuming the duties of the Condo Act, there is no conflict between an implied cause of action under Section 22.1(c) and any other statutes.

99.     At all relevant times, Westward was, or should have been, aware at the time it charged Plaintiffs an unreasonable fee to obtain disclosure documents that the Kenmore Club Board of Managers did not have authority to charge more than a "reasonable fee of the direct out-of-pocket costs" for providing disclosure documents to condo sellers.

100.     In Illinois, an agent is liable where he or she takes an active part in violation of some duty the principal owes to a third person.

101.     Westward is an agent of Kenmore Club pursuant to a contract or agreement wherein it assumed the Association's statutory duties under Sections 22.1 (a), (b), and (c) of the Act, and therefore can be held liable for taking an active part in breaching statutory duties owed by its principal (Kenmore Club) to third-party condo sellers.

FILED DATE: 4/16/2019 4:51 PM  2019CH04869

102.    By failing to perform their statutory duty to charge only a "reasonable fee covering the direct out-of-pocket costs" of providing disclosure documents to condo sellers, Westward has taken an active part in violating the duty to charge only a reasonable fee which their principal, the Association, owes to the Plaintiffs.

**WHEREFORE**, Plaintiffs, individually, and on behalf of all others similarly situated, pray for an Order as follows:

A.    Finding that this action satisfies the prerequisites for maintenance as a class action set forth in Illinois, and certifying the Class defined herein;

B.    Designating the Channons as representative of the Class, and their undersigned counsel as Class Counsel;

C.    Entering Judgment in favor of the Channons and the Class and against Defendant Westward Management, Inc.

D.    Awarding the Channons and the Class all equitable and monetary relief in an amount to be determined at trial, including pre-judgment and post-judgment interest;

E.    Awarding the Channons and the Class any and all actual damages, attorney's fees and costs, including interest thereon, as allowed or required by law; and

F.    Granting all such further relief and other relief as the Court deems just and appropriate.

## COUNT II
### (Violation of the Illinois Consumer Fraud and Deceptive Business Practices Act)

103.    Plaintiffs restate and incorporate by reference paragraphs 1 – 102 of this Class Action Complaint as paragraph 103 as if fully set forth herein.

104.    The Illinois Consumer Fraud and Deceptive Business Practices Act prohibits any deceptive, unlawful, unfair, or fraudulent business acts or practices including using deception, fraud, false pretenses, false promises, false advertising, misrepresentation, or the concealment,

FILED DATE: 4/16/2019 4:51 PM   2019CH04869

suppression, or omission of any material fact, or the use or employment of any practice described in Section 2 of the "Uniform Deceptive Trade Practices Act." 815 ILCS § 505/2.

105.     The Illinois Consumer Fraud and Deceptive Business Practices Act applies to Defendant's unfair acts as described herein because Defendant's unfair acts occurred in the course of trade and commerce, *i.e.* transactions involving the sale of goods or services to consumers.

106.     Westward is a "person" as defined by Section 505/1(c) of the Illinois Consumer Fraud and Deceptive Business Practices Act.

107.     The Channons and each Class member are "consumers" as defined by section 505/1(e) of the Illinois Consumer Fraud and Deceptive Business Practices Act.

108.     Westward's acts of charging the Channons and similarly situated Class members an unreasonable and excessive fee to produce the necessary Section 22.1 disclosure documents violates the Illinois Consumer Fraud and Deceptive Business Practices Act (815 ILCS 505/1, *et seq.*) because: (1) Westward's acts are unfair, (2) Westward intended that the Channons and each Class member rely on its unfair acts, (3) Westward's unfair acts occurred in the course of trade or commerce, and (4) Westward's unfair acts proximately caused the Channons' and each Class member's actual damages.

109.     Westward's act of charging the Channons and each Class member an unreasonable and excessive fee to produce the necessary section 22.1 disclosure documents is unfair because it (1) offends public policy, (2) is immoral, unethical, oppressive, and/or unscrupulous, and (3) causes substantial injury to the Channons and each Class member.

110.     Westward's acts offend Illinois' statutorily-defined public policy because they violate the Illinois Condominium Property Act's stated intent that only a "reasonable fee covering

FILED DATE: 4/16/2019 4:51 PM    2019CH04869

the direct out-of-pocket cost of providing [22.1 disclosures] and copying may be charged." 765 ILCS 605/22.1(c).

111.    Westward's acts also offend Illinois' public policy because the Channons and each Class member have no reasonable choice but to obtain the documents from Westward in order to sell their individual condominium units, in exchange for an excessive and unreasonable fee.

112.    Westward's acts are immoral, unethical, oppressive and/or unscrupulous because the Channons and each Class member have no reasonable alternative but to pay Westward's excessive and unreasonable fee to obtain the necessary 22.1 disclosure documents.

113.    Pursuant to the Illinois Condominium Property Act, the Channons and similarly situated Class members are required by law to obtain and disclose the 22.1 disclosure documents to a prospective condominium purchaser to sell their individual condominium units. 765 ILCS 605/22.1(a).

114.    Westward's acts are so oppressive as to leave the Channons and each Class member with no reasonable alternative but to pay Westwards' excessive and unreasonable fees to obtain the necessary Section 22.1 disclosure documents, because the Channons and the Class cannot reasonably obtain the necessary Section 22.1 disclosure documents from any other source but from Westward.

115.    The Channons and each Class member are required to use Westward to obtain the necessary Section 22.1 disclosure documents, and thus have no meaningful choice except to pay Westward's excessive and unreasonable fees.  Westward forces the seller to choose between paying an exorbitant fee and failing to provide the necessary disclosure documents to potential buyers, thus opening themselves to potential liability.  This is no real choice at all.

FILED DATE: 4/16/2019 4:51 PM    2019CH04869

116.    The Channons and each Class member cannot obtain the necessary Section 22.1 disclosure documents from Westward without first paying Westward's excessive and unreasonable fees.

117.    Westward's acts cause substantial injury to consumers because the Channons and each Class member are forced to pay Westward's excessive and unreasonable fees that is not the "direct out-of-pocket costs of providing such information and copying." 765 ILCS 605/22.1(c).

118.    The Channons and each Class member paid Westward's excessive and unreasonable fees under the assumption and in reliance that Westward's fees for producing the necessary Section 22.1 disclosure documents covered and was no greater than Westward's actual "direct out-of-pocket expenses for providing such information and copying." 765 ILCS 605/22.1(c).

119.    Westward intended that the Channons and each Class member rely on its unfair acts of charging excessive and unreasonable fees to produce the necessary Section 22.1 disclosure documents because the Principal-Association (Kenmore Club) is required by statute to, and Westward as designated Agent, therefore knew it may only charge a "reasonable fee" covering and not greater than the direct out-of-pocket cost for providing the necessary Section 22.1 disclosure documents to condo sellers. 765 ILCS 605/22.1(c).

120.    Westward's unfair acts of charging the Channons and each Class member excessive and unreasonable fees to produce the necessary Section 22.1 disclosure documents occurred in the course of trade and commerce because the production of condominium records in exchange for a fee constitutes trade and commerce.

121.    Westward's unfair acts of charging the Channons and each Class member excessive and unreasonable fees to produce the necessary Section 22.1 disclosure documents are the actual

FILED DATE: 4/16/2019 4:51 PM   2019CH04869

and proximate cause of the Channons' and each Class member's injuries because but for the Westward's unfair acts, the Channons and each Class member would not have had to pay excess and unreasonable fees to obtain the necessary Section 22.1 disclosure documents. 765 ILCS 605/22.1(c).

122.    The Channons and each Class member sustained actual damages due to the Westward's unfair acts because the Channons and each Class member were forced to pay excessive and unreasonable fees to obtain disclosure documents necessary to comply with their statutory duty under Section 22.1 to provide to prospective buyers. 765 ILCS 605/22.1(c).

123.    As a result of Westward's wrongful and unfair conduct in charging an unreasonable and excessive fee to produce Section 22.1 disclosure documents which the Channons and each Class member is effectively compelled by law to obtain for a prospective condominium purchasers, Westward has committed, and continues to commit, unfair acts in violation of the Illinois Consumer Fraud and Deceptive Business Practices Act (815 ILCS 505/1, *et seq.*).

**WHEREFORE**, Plaintiffs, individually, and on behalf of all others similarly situated, pray for an Order as follows:

A.    Finding that this action satisfies the prerequisites for maintenance as a class action set forth in Illinois, and certifying the Class defined herein;

B.    Designating the Channons as representative of the Class, and their undersigned counsel as Class Counsel;

C.    Entering Judgment in favor of the Channons and the Class and against Defendant Westward Management;

D.    Enjoining Defendant's illegal conduct alleged herein and ordering disgorgement of any of its ill-gotten gains;

E.    Awarding the Channons and the Class any and all actual, compensatory, and punitive damages to the extent permitted under the Illinois Consumer Fraud and

FILED DATE: 4/16/2019 4:51 PM    2019CH04869

Deceptive Business Practices Act, in addition to their reasonable attorney's fees and costs; and

F.      Granting all such further relief and other relief as the Court deems just and appropriate.

## **JURY DEMAND**

Plaintiffs demand trial by Jury on any issues triable by a Jury.

<u>Dated</u>: April 16, 2019                          Respectfully submitted,

Plaintiffs, Harry Channon and Dawn Channon, individually, and on behalf of all others similarly situated

By: */s/ Terrie C. Sullivan* _____
      Counsel for the Plaintiffs and the Putative Class

Richard A. Greenswag, Esq.                 Terrie C. Sullivan, Esq.
GREENSWAG & ASSOCIATES, P.C.               Jeffrey C. Blumenthal, Esq. (Atty. I.D. #38847)
181 Waukegan Rd., Suite 205                Michael D. Richman (*Of Counsel*)
Northfield, IL 60093-2700                  JEFFREY C. BLUMENTHAL CHARTERED
Tel: (847) 701-2250                        2970 Maria Avenue, Suite #223
Fax: (847) 501-5390                        Northbrook, Illinois 60062
Rgreenswag@greenswaglaw.com                Tel: (847) 498-3220   Fax: (847) 498-3221
                                         Terrie@jcblawyer.com
                                         Jeffrey@jcblawyer.com
                                         Michael@jcblawyer.com

FILED
4/16/2019 4:51 PM
DOROTHY BROWN
CIRCUIT CLERK
COOK COUNTY, IL
2019CH04869
4715595

# EXHIBIT F

FILED DATE: 4/16/2019 4:51 PM   2019CH04869

Harry and Dawn Channon
3626 North Damen Ave. #1
Chicago, IL  60618

July, 28, 2017

**Via Certified Mail, Return Receipt Requested**
Westward Management, Inc.
4311 N. Ravenswood Ave., Suite 201
Chicago, IL  60613
Attn:  Gwen Kaminskas

RE: **$245.00 charge by Westward Management, Inc. for processing and copying in connection with the sale of Condominium Unit # 1E 5109 N. Kenmore Ave., Chicago, Illinois 60640- Harry and Dawn Channon to Elizabeth & Cahontas Vincent, as Purchasers**

Dear Ms. Kaminskas:

On April 18, 2016, my wife and I closed on the sale of condominium unit #1E at 5109 N. Kenmore Ave, Chicago, Illinois, 60640 which is part of the Kenmore Club Condominium Association. Prior to the sale, I submitted a preprinted form titled Document Request Form to Westward Management, Inc., for me to obtain the documents and information that a non-developer seller is required to provide a prospective purchaser upon the resale of a condominium unit pursuant to Section 22.1 of the Illinois Condominium Property Act (760 ILCS 605/22.1).

We were charged $245 for the information and documents that we needed in order to consummate the closing of our condominium unit.  I am attaching a copy of the preprinted Document Request Form that was submitted.

Please consider this letter as my **demand, that within fourteen (14) days, you provide me with the following information and/or documentation:**

(a) What Section 22.1 documents and/or information were provided as part of Document Request and the direct out of pocket cost to Westward for providing those documents and/or information and the back-up supporting documentation for Westward's out of pocket costs.
(b) Please also provide the basis for how Westword determined the amount we would be charged for those documents.

FILED DATE: 4/16/2019 4:51 PM   2019CH04869

(c) If different from (a) above, the back-up supporting documentation for the $150.00 charge for the "Paid Assessment Letter" and/or the basis indicating how Westword determined that I should be charged $150.00 for the Paid Assessment Letter.

I thank you in advance for your courtesy and prompt attention to this letter.

Very Truly Yours,

Harry O. Channon

Enclosure

FILED DATE: 4/16/2019 4:51 PM   2019CH04869



## DOCUMENT REQUEST FORM

Your request will be processed within five (5) business days of receipt of this request AND payment of fees.

Association Name: __KeNMore Club__

Property Address: __5109 N. KeNMoR AvE, 1E__

Seller/Current Owner Name: __HARRY CHANNON + DAWN CHANNON__

( X ) SALE        (   ) REFINANCE

PLEASE CHECK THE APPROPRIATE BOX BELOW FOR ITEMS THAT YOU REQUIRE. PLEASE NOTE THAT AN ACCOUNT STATEMENT FOR THE UNIT IS AUTOMATICALLY INCLUDED WITH YOUR REQUEST AND DOES NOT NEED TO BE REQUESTED SEPARATELY.

| We Require This Item: | Description | Amount Due |
|---|---|---|
| [ ✔ ] | Paid Assessment Letter | 150.00 |
| [ ] | Declaration | 30.00 |
| [ ] | Bylaws | 20.00 |
| [ ] | Articles of Incorporation | 10.00 |
| [ ] | Rules & Regulations | 15.00 |
| [ ✔ ] | Year to Date Income Statement & Budget | 20.00 |
| [ ] | **Minutes (per quarter) | 5.00 |
| [ ✔ ] | Condo Questionnaire/Disclosure Statement/22.1 (each) | 75.00 |
| [ ✔ ] | Insurance Contact Information | 0.00 |
| [ ] | Super Rush (turnaround of one business day) | 200.00 |
| [ ] | Rush (turnaround of 3 business days) | 150.00 |

**Please indicate how many sets of minutes you require here:    0