# EXHIBIT 4

FILED
5/11/2023 10:37 AM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
2019CH04869
Calendar, 15
22675991

FILED DATE: 5/11/2023 10:37 AM 2019CH04869

**IN THE CIRCUIT COURT OF COOK COUNTY**
**COUNTY DEPARTMENT – CHANCERY DIVISION**

| | | |
|---|---|---|
| HARRY CHANNON and DAWN CHANNON, individually and on behalf of all others similarly situated, | ) ) ) ) | |
| Plaintiffs, | ) ) | 2019 CH 4869 |
| v. | ) ) | Hon. Anna M. Loftus |
| WESTWARD MANAGEMENT, INC., an Illinois corporation, | ) ) | Calendar 15 |
| Defendant. | ) ) | |

**<u>AMENDED CLASS ACTION COMPLAINT</u>**

Plaintiffs, Harry Channon and Dawn Channon ("Plaintiffs"), individually and on behalf of all other persons similarly situated, for their Amended Class Action Complaint against Defendant Westward Management, Inc., ("Westward" or "Defendant"), states as follows:

**INTRODUCTION**

1.     Plaintiffs bring this action to recover unfair, unreasonable and excessive fees that they and others similarly situated were required to pay Defendant to obtain certain necessary condominium association documents in connection with the sale of their condominium.  Plaintiffs bring their claim pursuant to the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS  505/1 *et seq.* (the "Act").

2.     As part of the real estate purchase and sale process, a condominium reseller is required by statute, and typically by contract, to deliver documents provided by the condominium association to the prospective buyer for review and approval prior to closing (hereinafter "Illinois Condominium Property Act Documents" or "ICPA Documents") [1].

---

[1] Typically, the purchase and sale contract used in a transaction is selected by the Realtor.  The most commonly used versions of the purchase and sale contract, the Multi Board 6.1 and the Chicago Association of Realtors Condominium Real Estate Purchase and Sale Contract, *require* a seller to provide ICPA

FILED DATE: 5/11/2023 10:37 AM   2019CH04869

3.     Condominium sellers are statutorily required to obtain disclosure documents from their condo Association Board of Managers or its managing agent, which, in this case is Westward. Pursuant to Illinois law, condominium sellers must then provide the documents to the prospective purchaser.

4.     Defendant's duties and obligations as the property manager included maintaining up to date ICPA Documents.  ICPA Documents are routinely requested by condominium and townhome owners for a variety of reasons, not just because of a possible sale of a condominium. Defendant electronically stores the ICPA Documents in connection with its routine and normal duties as a property manager and the Association pays Defendant for doing that.  Thus, Defendant had already been paid for maintaining up to date ICPA documents long before Plaintiffs requested those documents in connection with the sale of her condominium.  As Plaintiffs allege in detail below, Defendant's practice of charging Plaintiffs and other condominium sellers $575.00 to provide Plaintiffs with ICPA Documents not only offends public policy but is unethical, oppressive and unscrupulous, particularly where it requires minimum effort and time to do so since Defendant already has and maintains all the documents and Plaintiffs and other condominium sellers had no viable alternative to obtain those documents other than from Defendant.

5.     Defendant's policy and practice was to not disclose how much a prospective seller such as Plaintiffs would have to pay Defendant for ICPA Documents prior to the request being made. Upon information and belief, Defendant now discloses the costs to provide ICPA documents to new buyers.

## NATURE OF THE ACTION

6.     Condo sellers are beholden to property management companies who have complete

---

Documents to the purchaser, regardless of whether the purchaser requests those documents.

control over disclosure documents by virtue of their management contracts or agreements with condo associations.

7.      Westward uses its position of entrustment with disclosure documents as leverage to abuse condo sellers who are often involved in time-sensitive real estate transactions and have no other reasonable option but to pay whatever fee Westward chooses to charge, or risk their own potential liability under the Illinois Condominium Property Act, 765 ILCS 605/1 *et seq.* (the "Condo Act") by not providing the documents to prospective purchasers at all or providing deficient disclosure documents.

8.      Disclosure documents under Section 22.1 of the Condo Act are financial statements setting forth various aspects of the Association's financial condition and other statements related to the unit, which include: (1) current and anticipated capital expenditures of the association, (2) amount of assets held in the association's reserve fund, (3) insurance coverage requirements, (4) liens on the unit, (5) improvements or alterations made to the unit, (6) amounts of unpaid assessment fees and other charges due, (7) statement of the status of any pending lawsuit or judgments to which the association is a party, (8) governing documents of the association such as the declaration, bylaws, and rules and regulations, and (9) the identity and mailing address of the association's agent specifically designated to receive notices.

9.      Westward is the property management agent for the Kenmore Club Condominium Association ("Kenmore Club Condo Association" or "the Association").

10.     Westward is the Association's agent in connection with the financial management and record keeping of documents described in Section 22.1 of the Condo Act.  Westward is also the Association's designated agent in connection with the resale and transfer of ownership of a condominium unit within the Association's Property, which includes the process, procedures, and documents described under Section 22.1 "Resales; disclosures; fees."

FILED DATE: 5/11/2023 10:37 AM   2019CH04869

FILED DATE: 5/11/2023 10:37 AM   2019CH04869

11.     Like many other condo associations in Illinois, the Association's resale process requires condo sellers, such as Plaintiffs, to notify the Association's managing agent, in this case Westward, of the intent to sell their condo unit.  The seller is then required to request directly, and must obtain disclosure documents, from their Association's "other officer as is specifically designated [to] furnish [Section 22.1 disclosure documents] when requested to do so in writing and within 30 days of the request." 765 ILCS 605/22.1(b).

12.     The Association is not able to provide the disclosure documents to the condo seller. The Association's designated agent, Westward, manages disclosure documents as part of the agent's professional financial management services to the Association. (Attached as Exhibit A is a copy of Westward's previous website, located at https://westward360.com/association-management-chicago/ and as it existed on April 16, 2019, which details the financial management services it offers to condo associations).

13.     Section 22.1 is not only about providing documents; it is about the *management* of disclosure documents. Such management involves an ongoing process and professional expertise in the requirements of the Condo Act and the financial management, record keeping, stability, and security of the condominium association.

14.     Condo owners are not required to be CPAs, lawyers, maintenance repair persons, landscapers, or real estate sales experts to be a Board Manager. The lack of knowledge, ability, and/or expertise in the various duties, such as financial management of the documents described in Section 22.1(a)(1)-(9) of the Condo Act, does not preclude a condo owner from serving on the Board because he or she can still comply with their duties under the Condo Act by retaining professionals, such as Westward, who do have the skills, knowledge, and expertise necessary to assist the Board in complying with their duties under the Condo Act. 765 ILCS 605/18(a)(5).

15.     For example, the Association and its Board of Managers have the duty to physically

FILED DATE: 5/11/2023 10:37 AM   2019CH04869

maintain the common areas of the property. 765 ILCS 605/18.4(a). If the Board Manager was elderly or disabled and could not physically comply with the duty to repair, he or she be would not be excluded from consideration as a Board Member due to his limitations because the Association can contract with professional services to satisfy that duty, such as the Association did here when it retained Westward to manage and provide disclosure documents to condo sellers who so demand.

16.     When an agent, such as Westward, does not comply with the duties of its principal (the Association), it does not automatically infer that the Association Board of Managers is second in line to carry out the obligation. The Association Board of Managers still has no knowledge or *ability* to carry out this duty. It is not reasonable to expect that if the Association's designated agent for maintenance services refuses to fix the leaky roof in the common area of the Property, Board Managers must then become professional roofers to comply with their duties under the Condo Act.

17.     In this case, the Association contracted with Westward to comply with the duties set out under Section 22.1. Without the ability to *manage* the documents, the Board of Managers are unable to provide them to condo sellers with any degree of accuracy.

18.     Custom and practice in the condo industry is to contact the management agent of the Association, not the Board of Managers. Even if the seller were to first request the documents directly from the Association, the Association would direct the seller to Westward to obtain disclosure documents.

19.     Requiring the seller to first request disclosure documents from the Association, only to be directed to Westward, creates an unnecessary step and exchange of hands at the tail-end of a time-sensitive real estate transaction, and may cause sellers to risk losing a sale if a potential purchaser pulls out of a deal while waiting for disclosure documents.

20.     Requiring the Association to demand documents on the seller's (or prospective

FILED DATE: 5/11/2023 10:37 AM   2019CH04869

purchaser's) behalf opens the Association to potential liability to the prospective purchaser, whereas Section 22.1 has been interpreted to limit liability between the seller and prospective purchaser regarding the accuracy, completeness, and providing of disclosure documents.

21.     There is little value to retaining management companies that expose condo associations, such as the Association and its Board of Managers, to liability because of non-compliance and unscrupulous business decisions regarding the very law regulating the principal Association and its Board of Managers. The value of management companies, such as Westward, *is* their compliance services with the Condo Act, and necessarily requires strict adherence to the duties, obligations, and limitations governing condo associations, such as the Association and their Board of Managers, under Section 22.1 of the Condo Act.

22.     Alternatively, the seller may complain to the Association about the unreasonable and excessive fees charged by Westward prior to closing, yet the Association is still in no position to provide the documents to the seller without first obtaining them from Westward. Assuming the Association is even able to demand the documents from Westward on the seller's behalf (and assuming Westward would comply with the Association's demand), the fee Westward would charge the Association is the same fee it charges condo sellers. The Association is therefore forced to waste the Association's assets, thus breaching their duty of care, by not recouping Westward's fee at all every time a condo owner sells their unit to comply with their statutory duty under the Condo Act to provide disclosure documents to the seller. 765 ILCS 605/22.1(b). Additionally, the seller's transaction is threatened, the seller is harmed, and the Association is harmed either financially or through expanded potential liability from various parties.

23.     Westward is compensated for assuming a number of duties – including managing and providing disclosure documents to condo sellers. The management contract is between the

FILED DATE: 5/11/2023 10:37 AM  2019CH04869

Association and Westward – not between individual condo owners and Westward.  Westward is using its assumed duty to manage and provide documents to sellers as an opportunity to "shake down" and exploit individual condo sellers for profit rather than bargaining for its benefits with the Association's Board of Managers during the formation stage of the management contract or agreement.

24.     The Association does not manage or provide Section 22.1 disclosure documents to condo sellers. Westward assumed the duty and obligation, among others, to manage documents identified in Section 22.1 as the Agent for the Association. Westward is the Association's "other officer as is specifically designated" under Section 22.1(b) and charged with the statutory responsibility to both *manage* and *provide* disclosure documents to condo sellers upon demand.

25.     Westward charges condo sellers unfair, unreasonable and excessive fees to obtain disclosure documents under the guise that it has authority to do so via its contract or management agreement with the Association and/or under Section 22.1(c) of the Condo Act.

26.     At most, the Association permits Westward to collect its reasonable fee for providing the documents to condo sellers – not impose their own fee. This is because agents, like Westward, are only able to charge unit owners a fee if it is on behalf of the Association and with authorization either from the Association Board of Managers and/or the Condo Act.

27.     On information and belief, the Association did not authorize Westward to charge condo sellers unreasonable and excessive fees or costs to provide condo sellers disclosure documents held in their care and custody.

28.     Section 22.1(c) does not authorize management agents, such as Westward, to charge a fee for providing disclosure documents to condo sellers. Section 22.1(b) only permits the designated agent to provide the documents, but does not state that the designated agent may charge any fee whatsoever. 765 ILCS 605/22.1(c).  If Westward is not providing these documents

and charging on behalf of the Association (not giving the Association any of the fees it collected from unit sellers), Westward is then abusing the Association's property (the documents) to make a profit outside of the management contract or agreement.

29.     By virtue of its management contract or agreements with the Association, Westward exercises dominion and control over the Association's disclosure documents and does not disclose its "actual cost" of providing the documents to condo sellers. Thus, on information and belief, Westward is only able to provide disclosure documents to condo sellers precisely because it is an agent of the Association. Westward assumed the duty to manage the documents identified in Sections 22.1(a)(1)-(9) under its contract or agreement with the Association, and therefore, possess and controls the Association's disclosure documents.

30.     Upon information and belief, for the most part, Westward can provide disclosure documents immediately to the unit seller because they are electronically stored.

31.     Westward sets pre-determined fees for providing the 22.1 disclosure documents regardless of the number of documents requested, length of the documents, or method of delivery.

32.     Westward does not state the basis for how it determined the amount charged for these documents.

33.     As set forth herein, Westward's predatory practice of exploiting and price gouging captive condo sellers with unreasonable and excessive fees to obtain access to disclosure documents Westward is required by statute to provide prospective purchasers to close on the sale of their unit or risk legal liability for noncompliance with their duty under the statute, gives rise to Plaintiffs and the Class' claim under the Act.

## **JURISDICTION AND VENUE**

34.     Jurisdiction over Defendant is proper under 735 ILCS 5/2-209(a)(1) (transaction of any business within the State) and 735 ILCS 5/2-209(b)(3) (corporation organized under the laws

8

FILED DATE: 5/11/2023 10:37 AM   2019CH04869

of this State).

35.    Venue is proper in this Court pursuant to 735 ILCS 5/2-101, because the transaction(s), or a substantial part thereof, occurred in Cook County and Defendant is an Illinois corporation doing business in Cook County. 735 ILCS 5/2-102(a).

## PARTIES

36.    Plaintiffs Harry Channon and Dawn Channon are natural persons and citizens of the State of Illinois at all times relevant to the events detailed herein.

37.    Defendant is a corporation organized in and existing under the laws of the State of Illinois, with its principal place of business located at 1464 West Webster Avenue, Chicago, Illinois 60614.

## SUBSTANTIVE ALLEGATIONS

38.    Plaintiffs were the owners of a condominium unit located at 5109 North Kenmore Avenue, Unit 1E, Chicago, Illinois 60640, which was part of the Kenmore Club Condo Association for several years until April 18, 2016, when the Unit was sold.

39.    Plaintiffs, upon accepting a contract for the sale and purchase of Plaintiffs' real estate or in the process of finding a buyer for their real estate, contacted the property manager for their condominium association to obtain the ICPA Documents, as required by the contract.

40.    These statutory ICPA Documents include:

> (1) A copy of the Declaration, by-laws, other condominium instruments and any rules and regulations;

> (2) A statement of any liens, including a statement of the account of the unit setting forth the amounts of unpaid assessments and other charges due and owing as authorized and limited by the provisions of Section 9 of the Condo Act or the condominium instruments;

> (3) A statement of any capital expenditures anticipated by the unit owner's association within the current or succeeding two fiscal years;

FILED DATE: 5/11/2023 10:37 AM   2019CH04869

(4)  A statement of the status and amount of any reserve or replacement fund and any portion of such fund earmarked for any specified project by the Board of Managers;

(5)  A copy of the statement of financial condition of the unit owner's association for the last fiscal year for which such statement is available;

(6)  A statement of the status of any pending suits or judgments in which the unit owner's association is a party;

(7)  A statement setting forth what insurance coverage is provided for all members or unit owners by the unit owner's association;

(8)  A statement that any improvements or alterations made to the unit, or the limited common elements assigned thereto, by the prior unit owner are in good faith believed to be in compliance with the condominium instruments; and

(9)  The identity and mailing address of the principal officer of the unit owner's association or of the other officer or agent as is specifically designated to receive notices.  765 ILCS 605/22.1.

41.  On or about February 20, 2016, Cahontas and Elizabeth Vincent (the "Vincents"), as prospective purchasers of Plaintiffs' condominium unit, entered into a real estate contract (the "Real Estate Contract") with Plaintiffs. (A copy of the Real Estate Contract is attached hereto as **Exhibit B**).

42.  Pursuant to paragraph 9 of the Real Estate Contract, and according to Section 22.1 of the Condo Act, as sellers, Plaintiffs were required to provide the Vincents, as prospective purchasers, with the disclosure information and documents required by 765 ILCS 605/22.1(a). Failure to provide disclosure documents to a prospective purchaser and/or deficient documents subjects the condo seller to potential liability under Section 22.1 of the Condo Act. (A copy of Section 22.1 of the Condo Act is attached hereto as **Exhibit C**).

43.  The Board of Managers, on behalf of the Association, is required by statute to provide the Section 22.1 disclosure documents to a requesting unit owner. 765 ILCS 605/22.1(a). The Board of Managers commonly designates this duty to a property management company, if

one is retained, which is what happened here when the Association retained Westward. 765 ILCS 605/18(a)(5).

44.     On information and belief, Westward has the ability to negotiate its compensation during the bargaining phase of its contractual or management agreement with the Association. As a professional property management business, Westward is a sophisticated party. As such, on information and belief, Westward had an opportunity to bargain for the specific duties it was to assume, and the services it was to provide to the Kenmore Club Condo Association. Westward was aware, or should have been aware, of all the duties it was assuming from the Association because Westward's professional obligations under the Condo Act and the Condo Manager Act include the duties to be knowledgeable of: (i) the Condo Act, (ii) the Illinois Not-for-Profit Corporation Act, (iii) its principal's bylaws, and (iv) any other laws pertaining to community association management. 765 ILCS 605/18.3; 605/18.7(c)(3).

45.     Upon information and belief, throughout the entire duration of the events set forth herein, Westward was (and still is) the management agent for Kenmore Club Condo Association.

46.     At all relevant times, Westward was the agent specifically designated under Sections 22.1 (b) and (c) for the Association in connection with the service of providing disclosure documents to unit sellers upon demand as part of its management duties for the Association.

47.     Property management companies, like Westward, are agents of the Association by virtue of their management contracts or agreements with them. 765 ILCS 605/18.7(b). On information and belief, as Agent of the Kenmore Club Condo Association, Westward provides financial management and record keeping services, and is thereby authorized to, and in fact does, manage and control the Association's financial documents and records identified under Section 22.1(a)(1)- (9) (*i.e.*, disclosure documents).

48.     The resale process for the Kenmore Club Condo Association requires condo sellers

FILED DATE: 5/11/2023 10:37 AM   2019CH04869

to notify their Association's managing agent, in this case Westward, of the intent to sell their condo unit. The seller is then required to request directly, and must obtain disclosure documents, from their Association's designated agent, Westward – the party who has assumed the specific statutory duty to provide the seller with Section 22.1 disclosure documents. 765 ILCS 605/22.1(b).

49.     On information and belief, Westward exclusively manages and controls Section 22.1 disclosure documents on behalf of the Association electronically, which are accessible through Westward and its agents.[2]

50.     Plaintiffs, and similarly situated condo sellers, must rely on Westward to provide them with accurate and comprehensive disclosure documents that comply with the mandates of Sections 22.1(a)(1)-(9) of the Condo Act because Westward is the only party authorized by the Association to manage and provide these documents to them.

51.     On information and belief, the Association is not equipped with the expertise or knowledge of the relevant legal requirements and financial management to adequately provide disclosure documents to sellers – hence, the statutory duty is delegated to Westward, a professional Association Management company. 765 ILCS 605/18(a)(5); (*See* **Exhibit A**). Even if Plaintiffs were able to obtain disclosure documents from their Association to avoid Westward's excessive fees, Plaintiffs run the risk of receiving deficient disclosure documents. Plaintiffs would then be subject to potential liability, because it is the *seller* that has a statutory obligation to provide such documents to potential purchasers.

---

[2] On information and belief, Westward makes the Association's Governing Documents (*i.e.*, Declaration, Bylaws, Articles of Incorporation, Rules & Regulations) available in real time to all homeowners via its online portal currently known as the Buildium™ platform. However, it is unclear if Westward charges condo owners a fee, for non-sale related requests, (separate from Association fees) to access and download these documents in the online portal.

FILED DATE: 5/11/2023 10:37 AM   2019CH04869

52.     As this statutory duty was delegated to, and assumed by Westward, condo sellers, such as Plaintiffs herein, would not reasonably request these documents from their Association.

53.     Though the condominium associations' Board is the party specifically obligated to provide the ICPA Documents to a selling unit owner ("reseller") upon request, such obligation is typically fulfilled by a designated property manager that is paid by the respective association, or its agent.  Unit owners already make regular homeowner assessment payments to the Board for such services.

54.     A selling unit owner's failure to provide a potential buyer with the ICPA Documents, or providing them with incorrect documents, is a breach of the real estate sales contract and likely results in a failed transaction.  In fact, a buyer's approval of the ICPA Documents is a substantial element of the real estate closing process.  Delay in a real estate sale or breach of such contracts routinely leads to litigation, monetary and nonmonetary damages for unit sellers.  Unit owners are given no other option than to pay Defendant's unreasonable, unfair and unlawful fees because failing to obtain the documents results in the seller's inability to sell their own real property causing extreme damages.

55.     A buyer's approval, or non-rejection, of the ICPA Documents is required for the real estate sale to proceed and eventually close.  The failure of any unit seller, like Plaintiffs, to timely and accurately provide the ICPA Documents may cause delays in the sale, resulting in fees and charges and may also cause termination of the sale and inability to convey the seller's unit to the buyer.

56.     Sellers such as Plaintiffs are specifically required by statute to provide potential buyers with the ICPA Documents in the form and manner provided by the Board of Managers. A condominium unit seller is not permitted to obtain the ICPA Documents through other means, and while only condominium declarations may be available from the County Recorder's office,

FILED DATE: 5/11/2023 10:37 AM   2019CH04869

a seller is required to obtain such documents from the Board, regardless of the Board's selected means of delivery.  *See* 765 ILCS 605/22.1(a).

57.     Condominium associations are required to record certain of the ICPA Documents, such as the condominium declarations, covenants and restrictions of record, with the Recorder of Deeds Office.  Obtaining such a declaration from the Recorder of Deeds typically costs Two Dollars and Fifty Cents ($2.50).

58.     On or about March 16, 2016, Plaintiffs ordered the 22.1 Documents from Westward.

59.     Westward provided Plaintiffs an "Escrow Document Request Form". This document is created by Westward and contains Westward's name in the letterhead. Westward provided Plaintiffs, and similarly situated condo unit sellers, this document on behalf of the Association. The Escrow Document Request Form states, in relevant part:

> If this request is to obtain a PAID ASSESSMENT LETTER for a SALE/TRANSFER of OWNERSHIP, please fax/email: Cover Sheet, Document Request Form, Credit Authorization Form, Notice of Intent to Sell, Homeowner Information Sheet and Governing Documents Rider (entire package).

(A copy of the documents listed above that Plaintiffs completed and submitted is attached hereto as **Group Exhibit D**).

60.     As part of the package, Westward provided Plaintiffs with a "Document Request Form" for, among other things, the ICPA Documents.  (*See* **Group Exhibit D**).  The Document Request Form is created by Westward and contains Westward's name in the letterhead. Westward provided Plaintiffs, and similarly situated condo unit sellers, this document on behalf of the Association.

61.     Westward charged Plaintiffs $75.00 for a "Condo Questionnaire/Disclosure Statement 22.1" that provided some, but not all, Section 22.1 disclosure information.

FILED DATE: 5/11/2023 10:37 AM   2019CH04869

Additionally, Westward charged Plaintiffs $150.00 for a "Paid Assessment Letter" and $20.00 for a "Year to Date Income Statement and Budget." In total, Westward charged Plaintiffs Two-Hundred and Forty-Five Dollars ($245.00) to provide them with information they had a statutory duty to provide the Vincents, the prospective purchasers of the condo unit. Plaintiffs paid this fee via credit card. (*See* **Group Exhibit D**).

62.     On or about March 31, 2016, Westward, as Agent for and on behalf of the Association, provided Plaintiffs with a Condominium/Townhome Disclosure Statement. Alex Wiseman of Westward signed the Disclosure Statement as Agent for the Association. (A copy of the Disclosure Statement is attached hereto as **Exhibit E**.)

63.     In total, Plaintiffs paid Two Hundred Forty-Five Dollars ($245.00) to have access to the ICPA Documents.  No explanation of the reason for the convenience fees was provided.

64.     Defendant emailed the ICPA Documents to Plaintiffs, a task which takes a couple minutes.  Furthermore, the task of emailing the documents does not require any particular educational degree, special training, or professional license but rather the ability to read and send emails.  Because the ICPA Documents were readily available to Defendant, Defendant did not provide any service to Plaintiffs and others similarly situated that would justify the amount of fees Defendant charged them.

65.     Westward, as agent for and on behalf of the Association, provided Plaintiffs with the 22.1 Disclosure Documents, including a Paid Assessment Letter.

66.     Plaintiffs' statutory obligation under Section 22.1(a) continued up through the date of closing to provide the prospective purchaser with the required disclosure documents. In this case, the closing occurred on April 18, 2016.

67.     Unit sellers, such as Plaintiffs, have a statutory duty to provide prospective purchasers all disclosure documents and statements listed in Section 22.1 of the Condo Act.

FILED DATE: 5/11/2023 10:37 AM   2019CH04869

Nonetheless, Westward prices these documents separately and misleads the unit seller to believe they can cherry pick and choose among a list of disclosure documents to provide prospective purchasers.

68.     Although the statute provides only that "[a] reasonable fee covering the direct out of-pocket cost of providing such information and copying may be charged by the association or its Board of Managers to the unit seller for providing the information," the Association's management fee has pre-set charges totalling $245.00—regardless of the length of the documents or method of delivery. Additionally, some of these documents may be accessed via an online portal. (*See* **Exhibit D**).

69.     The management of disclosure documents occurs, or should occur, on an ongoing basis and well before a condo owner submits a request to Westward.

70.     As set forth herein, Westward's fee of Two Hundred Forty-Five dollars ($245.00) for providing the statutorily required Section 22.1 documentation is unfair, excessive and exploitive.

71.     On information and belief, Westward does not state the basis for how it determines the amount charged for these documents.

72.     On or about July 28, 2017, Plaintiffs sent a letter to Westward, wherein they demanded that Westward provide information and/or documentation supporting: (a) "out-of-pocket" costs for providing disclosure documents; (b) a basis for how it determined the amount to charge for these documents; and (c) supporting documentation for the $150.00 charge for the Paid Assessment Letter and/or basis for how it determined the fee.  Westward did not respond to Plaintiffs' demand.  (A copy of the Demand Letter is attached as **Exhibit F**).

73.     Plaintiffs and other similarly situated Class members cannot reasonably obtain the necessary documents to sell their unit from any other source but from Westward and Westward's

FILED DATE: 5/11/2023 10:37 AM   2019CH04869

agents including the aforementioned website at Westward's direction, and only if they provide Westward their credit card information. Plaintiffs and the putative Class are thus beholden to Westward and have no reasonable choice but to pay its unfair, unreasonable and excessive fees to obtain the necessary disclosure documents to sell their condominium unit and comply with their own statutory duty under the Condo Act.

74. Westward has effectively compelled Plaintiffs, and other similarly situated Class members, to pay this unfair, unreasonable and excessive fee to sell their condominium units, in violation of public policy of the State of Illinois.

## CLASS ALLEGATIONS

75. **Class Definition**: Plaintiffs bring this action pursuant to 735 ILCS 5/2-801 on behalf of themselves and a Class of similarly situated individuals, defined as follows:

> All Illinois citizens who sold or attempted to sell a condominium unit in a condominium association managed by Defendant where the purchaser(s) demanded that seller(s) provide the legally required disclosure information listed in 765 ILCS 605/22.1, compelling the seller(s) to pay Defendant an unfair, unreasonable and excessive fee to obtain this information from Defendant.

> Excluded from the Class are: (1) Defendant, Defendant's agents, subsidiaries, parents, successors, predecessors, and any entity in which Defendant or its parents have a controlling interest, and those entities' current and former employees, officers, and directors; (2) the Judge to whom this case is assigned and the Judge's immediate family; (3) any person who executes and files a timely request for exclusion from the Class; (4) any persons who have had their claims in this matter finally adjudicated and/or otherwise released; and (5) the legal representatives, successors and assigns of any such excluded person.

76. **Numerosity**: The exact number of Class members is unknown and is not available to Plaintiffs at this time, but individual joinder in this case is impracticable. The Class is likely to consist of hundreds, if not thousands, of individuals due to Defendant's management of a number of condominium associations in Illinois. Class members can be easily identified through

FILED DATE: 5/11/2023 10:37 AM   2019CH04869

Defendant's records or by other means.

77.     **Commonality and Predominance**: There are several questions of law and fact common to the claims of Plaintiffs and the Class members, and those questions predominate over any questions that may affect individual class members. The common questions of law and fact for Plaintiffs and all Class members include, but are not limited to, whether the amounts charged by Defendant for providing the disclosure information that Plaintiffs were legally obligated to obtain under 765 ILCS 605/22.1 constitutes an unfair fee and practice in violation of the Illinois Consumer Fraud and Deceptive Business Practices Act.

78.     **Adequacy of Representation**: Plaintiffs will fairly and adequately represent and protect the interests of the Class and have retained counsel competent and experienced in complex class action litigation. Plaintiffs have no interest antagonistic to those of the Class, and Defendant has no defenses unique to Plaintiffs.

79.     **Appropriateness**: Class proceedings are also superior to all other available methods for the fair and efficient adjudication of this controversy because joinder of all parties is impracticable. Further, it would be virtually impossible for the individual members of the Class to obtain effective relief because the damages suffered by individual Class members are likely to be relatively small, especially given the burden and cost of individually conducting the complex litigation necessitated by Defendant's actions. Even if Class members were able or willing to pursue such individual litigation, a class action would still be preferable due to the fact that a multiplicity of individual actions would likely increase the expense and time of litigation given the complex legal and factual controversies presented in this Class Action Complaint. A class action, on the other hand, provides the benefits of fewer management difficulties, single adjudication, economy of scale, and comprehensive supervision by a single Court, and would result in reduced time, effort and expense for all parties and the Court, and ultimately, the

FILED DATE: 5/11/2023 10:37 AM   2019CH04869

uniformity of decisions.

80.    Section 22.1 of the Condo Act provides,

(a)    In the event of any resale of a condominium unit by a unit owner other than the developer such owner shall obtain from the Board of Managers and shall make available for inspection to the prospective purchaser, upon demand . . .

(b)    The principal officer of the unit owner's association *or such other officer as is specifically designated* shall furnish the above information when requested to do so in writing and within 30 days of the request. 765 ILCS 605/22.1(a), (b).[3]

81.    The Association specifically designated Westward as its Agent to provide Section 22.1 Disclosure Documents under Section 22.1(b) to Plaintiffs and similarly situated Class members. (*See* **Exhibits D and E**).

82.    Disclosure requirements necessarily protect both sellers and purchasers. The prospective purchaser is protected from surprise and making an uniformed decision, whereas the condo seller's compliance with the disclosure requirements protects him or her from liability by providing and disclosing necessary information that the purchasers will use in making an informed decision.

83.    The duty to provide disclosure documents is ascribed to the Association and managing agent, interchangeably. The Condo Act does not make a distinction between the duties of the Association and those assumed by its agent because the statute assumes that the duties of the Association are co-extensive with those of its agent.

84.    Section 18(a)(5) of the Condo Act expressly permits professional property management companies, like Westward, to assume the fiduciary and statutory duties of the Association Board of Managers. 765 ILCS 605/18(a)(5) ("the board may engage the services of a manager or a managing agent").

---

[3] Emphasis added unless otherwise noted.

FILED DATE: 5/11/2023 10:37 AM   2019CH04869

85.    Westward chose to assume the statutory duty to *manage* and *provide* disclosure documents to condo sellers, as prescribed under Sections 22.1(a) and (b) of the Condo Act.

86.    The duties of the Principal-Condo Association and that of its Agent-property management company are one and the same. Section 18(g) of the Condo Act defines a "property management company" as,

> [A] person, partnership, ***corporation***, or other legal entity ***entitled to transact business on behalf of others***, action on behalf of or ***as an agent for*** a unit owner, unit owners or ***association of unit owners*** for the ***purpose of carrying out the duties, responsibilities, and other obligations*** necessary for the day to day operation and management of any property subject to this Act. 765 ILCS 605/18(g).

87.    Conversely, Section 18.3 of the Condo Act states the following,

> The unit owners ***association*** is responsible for the ***overall administration*** of the property through its duty elected board of managers . . . The ***association*** shall have and exercise all powers necessary or convenient to effect any or all of the ***purposes for which the association is organized*** and to do ***every other act not inconsistent with law*** which may be appropriate to promote and attain the purposes set forth in this Act or in the condominium instruments. 765 ILCS 605/18.3.

88.    While the Condo Act explicitly authorizes the Association Board of Managers to hire a management agent, such as Westward, and does not place a limit on bargained for benefits under the contract or management agreement, as long as the requirements of the Condo Act are followed, the Board may impose additional rules in its declaration or bylaws. However, the Board of Managers may not take any action that is beyond the authority granted to it under the condominium instruments and the Condominium Property Act. 765 ILCS 605/18.4.

89.    Westward's "duties, responsibilities, and obligations" are that of its principal Association—which includes complying with the Condo Act, and any other applicable laws "which may be appropriate to promote and attain the purposes set forth in this Act." 765 ILCS 605/18.3; 605/18(g).

90.    Property management agents are assuming the very duties that the Condo Act was created to regulate. By providing the disclosure documents to Plaintiffs, it is evident that

20

FILED DATE: 5/11/2023 10:37 AM 2019CH04869

Westward has understood from Section 18 that this duty can be assumed by managing agents (presumably as the "such other officer as is specifically designated").

91.     Westward is presumed to have prior knowledge of all statutory duties that it assumed by virtue of its contract or agreement with the Association and its professional responsibilities under the Condo Act. 765 ILCS 605/18.7(c)(3), 605/18.4.

92.     At all relevant times, Westward was, or should have been, aware at the time it charged Plaintiffs an unfair, unreasonable and excessive fee to obtain disclosure documents that Westward had already been hired and paid to maintain.

93.     In Illinois, an agent is liable where he or she takes an active part in violation of some duty the principal owes to a third person.

94.     Westward is an agent of Association pursuant to a contract or agreement wherein it assumed the Association's statutory duties under Sections 22.1 (a), (b), and (c) of the Act, and therefore can be held liable for taking an active part in breaching statutory duties owed by its principal (Association) to third-party condo sellers.

95.     By charging an unfair, unreasonable, excessive and exploitive fee for providing disclosure documents to condo sellers, Westward has violated the Illinois Consumer Fraud Act.

### COUNT I
### (Violation of the Illinois Consumer Fraud and Deceptive Business Practices Act)

96.     Plaintiff restates and incorporates by reference paragraphs 1 – 95 of this Class Action Complaint as paragraph 96 as if fully set forth herein.

97.     The Illinois Consumer Fraud and Deceptive Business Practices Act prohibits any deceptive, unlawful, unfair, or fraudulent business acts or practices including using deception, fraud, false pretenses, false promises, false advertising, misrepresentation, or the concealment, suppression, or omission of any material fact, or the use or employment of any practice described

in Section 2 of the "Uniform Deceptive Trade Practices Act." 815 ILCS § 505/2.

98. The Illinois Consumer Fraud and Deceptive Business Practices Act applies to Defendant's unfair acts as described herein because Defendant's unfair acts occurred in the course of trade and commerce, *i.e.* transactions involving the sale of goods or services to consumers.

99. Westward is a "person" as defined by Section 505/1(c) of the Illinois Consumer Fraud and Deceptive Business Practices Act.

100. Plaintiffs and each Class member are "consumers" as defined by section 505/1(e) of the Illinois Consumer Fraud and Deceptive Business Practices Act.

101. Westward's acts of charging Plaintiffs and similarly situated Class members an unreasonable and excessive fee to produce the necessary Section 22.1 disclosure documents violates the Illinois Consumer Fraud and Deceptive Business Practices Act (815 ILCS 505/1, *et seq.*) because: (1) Westward's acts are unfair, (2) Westward intended that Plaintiffs and each Class member rely on its unfair acts, (3) Westward's unfair acts occurred in the course of trade or commerce, and (4) Westward's unfair acts proximately caused Plaintiffs' and each Class member's actual damages.

102. Westward's act of charging Plaintiffs and each Class member an unreasonable and excessive fee to produce the necessary section 22.1 disclosure documents is unfair because it (1) offends public policy, (2) is immoral, unethical, oppressive, and/or unscrupulous, and (3) causes substantial injury to Plaintiffs and each Class member.

103. Westward's acts also offend Illinois' public policy because in order to comply with Illinois law, Plaintiffs and each Class member have no reasonable choice but to obtain the documents from Westward in order to sell their individual condominium units, in exchange for an unfair, unreasonable and excessive fee.

104. Westward's acts are immoral, unethical, oppressive and/or unscrupulous because

FILED DATE: 5/11/2023 10:37 AM 2019CH04869

Plaintiffs and each Class member have no reasonable alternative but to pay Westward's unreasonable and excessive fee to obtain the necessary 22.1 disclosure documents.

105.    Westward's acts are so oppressive as to leave Plaintiffs and each Class member with no reasonable alternative but to pay Westward's unreasonable and excessive fees to obtain the necessary Section 22.1 disclosure documents, because Plaintiffs and the Class cannot reasonably obtain the necessary Section 22.1 disclosure documents from any other source but from Westward.

106.    Westward forces the seller to choose between paying an exorbitant fee and failing to provide the necessary disclosure documents to potential purchasers, thus opening themselves to potential liability. This is no real choice at all.

107.    Plaintiffs and each Class member cannot obtain the necessary Section 22.1 disclosure documents from Westward without first paying Westward's excessive and unreasonable fees.

108.    Westward's unfair practice of charging Plaintiffs and each Class member unfair, unreasonable and excessive fees to produce the necessary Section 22.1 disclosure documents occurred in the course of trade and commerce because the production of condominium records in exchange for a fee constitutes trade and commerce.

109.    Westward's unfair practice of charging Plaintiffs and each Class member unfair, unreasonable and excessive fees to produce the necessary Section 22.1 disclosure documents are the actual and proximate cause of Plaintiffs' and each Class member's injuries because but for the Westward's unfair acts, Plaintiffs and each Class member would not have had to pay unfair, unreasonable and excessive fees to obtain the necessary Section 22.1 disclosure documents. 765 ILCS 605/22.1(c).

110.    Plaintiffs and each Class member sustained actual damages due to Westward's

unfair practice because Plaintiffs and each Class member were forced to pay unreasonable and excessive fees to obtain disclosure documents necessary to comply with their statutory duty under Section 22.1 to provide to prospective purchasers. 765 ILCS 605/22.1(c).

111.    As a result of Westward's wrongful and unfair conduct in charging an unreasonable and excessive fee to produce Section 22.1 disclosure documents which Plaintiffs and each Class member are effectively compelled by law to obtain for a prospective condominium purchaser, Westward has committed, and continues to commit, unfair acts in violation of the Illinois Consumer Fraud and Deceptive Business Practices Act (815 ILCS 505/1, *et seq.*).

112.    Plaintiffs are not seeking a return of the entire amount they paid Defendant for ICPA Documents but only that portion which was unfair, unreasonable and excessive.

**WHEREFORE**, Plaintiffs, individually, and on behalf of all others similarly situated, prays for an Order as follows:

A.    Finding that this action satisfies the prerequisites for maintenance as a class action set forth in Illinois, and certifying the Class defined herein;

B.    Designating Plaintiffs as representatives of the Class, and their undersigned counsel as Class Counsel;

C.    Entering Judgment in favor of Plaintiffs and the Class and against Defendant;

D.    Enjoining Defendant's illegal conduct alleged herein and ordering disgorgement of any of its ill-gotten gains;

E.    Awarding Plaintiffs and the Class any and all actual, compensatory, and punitive damages to the extent permitted under the Illinois Consumer Fraud and Deceptive Business Practices Act, in addition to their reasonable attorney's fees and costs; and

F.    Granting all such further relief and other relief as the Court deems just and appropriate.

FILED DATE: 5/11/2023 10:37 AM   2019CH04869

FILED DATE: 5/11/2023 10:37 AM   2019CH04869

## JURY DEMAND

Plaintiffs demand trial by Jury on any issues triable by a Jury.

Dated:  May 11, 2023

Respectfully submitted,

/s/_____James X. Bormes_____

*One of the Attorneys for Plaintiff*

James X. Bormes                        Thomas M. Ryan
Catherine P. Sons                      Law Office of Thomas M. Ryan, P.C.
Law Office of James X. Bormes, P.C.    35 E. Wacker Drive, Suite 650
8 South Michigan Avenue, Ste. 2600     Chicago, Illinois 60601
Chicago, IL 60603                      43682
312.201.0575                           312.726.3400
33422                                  tom@tomryanlaw.com
bormeslaw@sbcglobal.net
cpsons@bormeslaw.com